# RUSSELL *v.* SEBASTIAN.

## ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 415.   Argued January 6, 1914.—Decided April 6, 1914.

In determining the question of impairment under the contract clause of the Constitution it is the duty of this court to determine for itself the nature and extent of rights acquired under prior legislative or constitutional action.

The state court having construed a statutory or constitutional provi-

sion, which gave specified privileges in regard to public utilities in a certain class of municipalities under specified conditions without specifying the persons or corporations who could avail thereof or the method of acceptance, to the effect that the grant became effective in any municipality within the designated class by the party accepting it as if it had been made specially to the accepting party, this court follows such construction in regard to § 19 of art. XI of the constitution of 1879 of California as amended in 1884.

When the State declares that it is bound if its offer to grant a privilege, which plainly contemplates the establishment of a plant and the assumption of a duty to perform the services incident to a public utility, is accepted, the grant resulting from the acceptance constitutes a contract and vests a property right in the accepting party which is within the protection of the contract clause of the Federal Constitution.

The rule that public grants are to be construed strictly in favor of the public, and ambiguities are to be resolved against the grantee, is a salutary one to frustrate efforts through skilful wording of the grant by interested parties; but the rule does not deny to public offers a fair and reasonable interpretation or justify withholding that which the grant was intended to convey.

An offer of the State to allow parties, ready to serve municipalities with gas or water, provisions for conveying the gas or water, is to be given a practical common-sense construction; and the breadth of the offer is commensurate with the requirements of the undertaking invited.

Where the constitution of the State does not forbid, the State may determine the policy of making direct grants for franchises in municipalities and may determine their terms and scope.

A grant to lay pipes and conduits in the streets of a municipality, dependent only upon acceptance, is not to be regarded as accepted foot by foot as pipes are laid, but in an entirety for all the streets of the municipality; and after acceptance and preparation for compliance with the offer the grant cannot be withdrawn as to the streets in which pipes have not been laid. Such action would impair the contract.

The duty of a public service corporation to extend its service to meet reasonable demands of the community is correlative to the obligation of the municipality to allow the service to be extended as required by the public needs.

In this case the public service corporation having, by accepting the offer of the State and making the investment, committed itself irrevocably to the undertaking, it was entitled to continue to lay pipes

in the streets whenever necessary to extend its service, and it could not be prevented from doing so by subsequent legislation impairing the grant.

The amendment of 1911 to § 19 of art. XI of the California constitution of 1879 as amended in 1884 and municipal ordinances of Los Angeles adopted in pursuance thereof, were ineffectual under the contract clause of the Federal Constitution to deprive a corporation which had accepted the offer of the State, contained in § 19 before · the amendment, of its right to continue to lay pipes in the streets of Los Angeles in accordance with the general regulations of the municipality in regard to such work.

163 California, 668, reversed.

THE facts, which involve the construction and constitutionality under the contract clause of the Federal Constitution of provisions of the constitution of California in regard to right of gas and water companies to excavate streets in municipalities for their mains, and the application of such provisions to such corporations in the City of Los Angeles, are stated in the opinion.

*Mr. Garret W. McEnerney* and *Mr. Oscar A. Trippet,* with whom *Mr. Warren Gregory, Mr. H. H. Trowbridge* and *Mr. W. H. Chickering* were on the brief, for plaintiff in error.

*Mr. Ray E. Nimmo* and *Mr. Albert Lee Stephens,* with whom *Mr. John W. Shenk* and *Mr. William J. Carr* were on the brief, for defendant in error.

By leave of the court, *Mr. Charles S. Wheeler* and *Mr. John F. Bowie* filed a brief as *amici curiæ.*

MR. JUSTICE HUGHES delivered the opinion of the court.

This is a writ of error to review a judgment in a *habeas corpus* proceeding.   163 California, 668.

The plaintiff in error was arrested, on or about Febru-

ary 27, 1912, upon the charge of excavating in a street of Los Angeles in violation of a municipal ordinance. He was acting on behalf of the Economic Gas Company, a corporation supplying inhabitants of the city with gas, and was engaged in preparing to lay its pipes in a street which it had not previously used. The company was proceeding under a claim of right based upon § 19 of art. XI of the state constitution of 1879, as amended in 1884, which was as follows:

"SEC. 19. In any city where there are no public works owned and controlled by the municipality for supplying the same with water or artificial light, any individual, or any company duly incorporated for such purpose, under and by authority of the laws of this state, shall, under the direction of the superintendent of streets, or other officer in control thereof, and under such general regulations as the municipality may prescribe, for damages and indemnity for damages, have the privilege of using the public streets and thoroughfares thereof, and of laying down pipes and conduits therein, and connections therewith, so far as may be necessary for introducing into and supplying such city and its inhabitants, either with gaslight, or other illuminating light, or with fresh water for domestic and all other purposes, upon the condition that the municipal government shall have the right to regulate the charges thereof."

On October 10, 1911, this section of the constitution was amended by the substitution of the following provision:

"SEC. 19. Any municipal corporation may establish and operate public works for supplying its inhabitants with light, water, power, heat, transportation, telephone service or other means of communication. Such works may be acquired by original construction or by the purchase of existing works, including their franchises, or both. Persons or corporations may establish and operate

works for supplying the inhabitants with such services upon such conditions and under such regulations as the municipality may prescribe under its organic law, on condition that the municipal government shall have the right to regulate the charges thereof. A municipal corporation may furnish such services to inhabitants outside its boundaries; *provided*, that it shall not furnish any service to the inhabitants of any other municipality owning or operating works supplying the same service to such inhabitants, without the consent of such other municipality, expressed by ordinance."

Thereupon, by ordinance approved October 26, 1911, the city of Los Angeles provided that no one should exercise any franchise or privilege to lay or maintain pipes or conduits in the streets for conveying gas, water, etc., without having obtained a grant from the city in accordance with the city's charter and the procedure prescribed by the ordinance, unless such person (or corporation) might be "entitled to do so by direct and unlimited authority of the constitution of the State of California, or of the constitution or laws of the United States." Another ordinance, approved February 21, 1912, declared that it should be unlawful to make any excavation in a street for any purpose without written permission from the board of public works, and that before issuing the permit the board should require the applicant to show legal authority to use the streets for the purpose specified.

It was under the last-mentioned ordinance that the charge was laid against the plaintiff in error. A writ of *habeas corpus* was sued out upon the ground that the municipal legislation, and the constitutional amendment upon which it rested, so far as they interfered with the extension by the company of its lighting system within the city, impaired the obligation of the company's contract with the State in violation of Art. I, § 10, of the Federal Constitution, and also deprived it of its property

without due process of law, and denied to it the equal
protection of the laws, contrary to the Fourteenth Amend-
ment. The writ was returnable before the Supreme Court
of the State.

It appeared that the Economic Gaslight Company was
organized in 1909 and thereupon undertook to manu-
facture and distribute gas within the city for lighting pur-
poses. As there were no gas works owned and controlled
by the city, the constitutional provision (as it stood be-
fore the amendment of 1911) applied. Having acquired
an existing plant, which had been established under the
authority of that provision, the company had extended
its system so that, prior to October 10, 1911, it had many
miles of mains and was serving upwards of 3500 customers.
Its plant had been established with a view to an increased
demand for its service. Its situation, as disclosed by the
petition, which was not traversed, was thus described by
the state court: The petitioner "shows that the works of
said company were established and operated with the
intent to supply gas in every section of the city and to
lay pipes in every street, if necessary for that purpose,
that to this end it constructed works of a size sufficient
to supply gas to a much larger territory than it was
supplying prior to October 10, 1911, and had expended in
so doing $100,000 more than would have been required
for works to supply only the territory reached by its
pipes at that date, that it had laid and maintained its
pipes in many streets of the city and had supplied gas
thereby to the inhabitants in such streets for more than
two years before said date, that prior to said date, said
company had made contracts with many of the inhabit-
ants of the city to supply gas to them, that said contracts
were still in force, and that, in order to perform them, it
must extend its mains into streets not before used by it.
All its works before that date were constructed in ac-
cordance with the provisions of the constitution existing

prior to said amendment and in compliance with existing regulations and directions of the city authorities." The petition also sets forth that by reason of the increased expense of construction of its plant, as above stated, it could not supply at a profit the territory contiguous to the streets actually used by it at the date of the amendment, and that to confine its service to that territory would entail upon the company a constant loss of more than $2,000 a month.

It was further averred that on February 23, 1912, the company had applied to the board of public works for permission to excavate in the designated street, not theretofore occupied by it, for the purpose of extending its distributing system in accordance with the former provision of the constitution, offering to comply with the general regulations of the city with respect to damages and indemnity for damages. The board informed the company that there were no general regulations on the subject with which it had not complied, but that the company would not be permitted to open the street, or to lay its pipes therein, unless it first sought and obtained a franchise by purchase in accordance with the ordinance of October 26, 1911. Thereupon, the company notified the board that it would extend its mains at the time and place stated and requested the board to direct and superintend the work. It was proceeding accordingly to open a trench for its mains when it was stopped by the arrest of the plaintiff in error.

The Supreme Court of the State held that the constitutional amendment authorized the city to enact the ordinances in question and thus to prescribe the terms and conditions upon which franchises of the character described might thereafter be obtained and exercised. It was further decided that the grant under the former constitutional provision took effect only upon acceptance; that the only means whereby an effectual manifestation

of acceptance could be made was the act of taking pos-
session and occupying the street for the purpose allowed;
and hence that the vested right of the Economic Gas
Company, at the time the constitution was changed,
went only so far as its actual occupancy and use of the
streets then extended. Concluding, upon this ground,
that the company had no authority to lay pipes in the
new street in order to extend its service into new territory
within the city, the petitioner was remanded to custody.
163 California, 677, 678, 681.

It is at once apparent that the question thus raised does
not concern the power of the city to supervise the execu-
tion of the work. That, as well as the authority to regulate
rates, was expressly secured by the constitutional provision
upon which the claim is founded. Nor does that provision
permit the assertion of an exclusive franchise. The city
may not only authorize others to compete, but it may com-
pete itself. *Madera Water Works* v. *Madera*, 228 U. S. 454.

Within these recognized limits, the question remains
as to the nature and extent of the right acquired by the
company prior to the constitutional amendment,—a
question which, in view of he appeal to the clause of the
Federal Constitution prohibiting state legislation im-
pairing the obligation of contracts, it is the duty of this
court to determine for itself. *Douglas* v. *Kentucky*, 168
U. S. 488, 502; *Northern Pacific Railway* v. *Duluth*, 208
U. S. 583, 590; *Grand Trunk Western Railway* v. *South
Bend*, 227 U. S. 544, 551; *Atlantic Coast Line R. R. Co.*
v. *City of Goldsboro*, 232 U. S. 548, 556.

1. Before the constitution of 1879, the right to lay
pipes in streets rested in grant from the legislature. It
could delegate to the municipality, or itself exercise, the
power. Experience had produced the conviction that
this authority was abused; that favoritism had fostered
monopolies and restrained the competition that was then
thought to be desirable. In order to terminate these

evils, the unique plan was decided upon of making street franchises, for the purpose of supplying water and artificial light, the subject of direct grant by the constitution itself without requiring any action on the part of the legislature to give it force. That this was the purpose and effect of § 19 of art. XI of the constitution of 1879 was decided by the Supreme Court of California in *People v. Stephens,* 62 California, 209, shortly after that constitution was adopted. See also *Pereria* v. *Wallace,* 129 California, 397; *In re Johnston,* 137 California, 115; *Denninger* v. *Recorder's Court,* 145 California, 629; *Stockton Gas & Electric Co.* v. *San Joaquin County,* 148 California, 313; *South Pasadena* v. *Pasadena Land & Water Co.,* 152 California, 579.

It is pointed out that the language of the provision was general both with respect to persons and to places; that it embraced all the cities in the State; and that it did not provide for any formal or written acceptance of the offer. But the lack of a requirement of an acceptance of a formal character did not preclude acceptance in fact. Nor did the generality of the provision with respect to all persons and cities make it impossible for particular persons to acquire rights thereunder in particular cities. It is clear that the offer was to be taken distributively with respect to municipalities. It referred to "any city where there are no public works owned and controlled by the municipality for supplying the same with water or artificial light;" and when as to such a city the offer was accepted, the grant became as effective as if it had been made specially to the accepting individual or corporation. (See *Stanislaus County* v. *San Joaquin Co.,* 192 U. S. 201, 206.)

In the case of *In re Johnston, supra,* the court said (p. 119): "In *People* v. *Stephens,* 62 California, 209, the above section" (referring to § 19 of art. XI) "was construed by this court to be a direct grant from the people to the persons therein designated of the right to lay pipes in the

streets of a city for the purpose specified, without waiting for legislative authority, or being subject to any restrictions from that branch of the government. . . . The only limitations upon this privilege are those contained in the language in which it is granted,—viz., that the work shall be done 'under the direction of the superintendent of streets, or other officer in control thereof,' and 'under such general regulations as the municipality may prescribe for damages and indemnity for damages.'" As it was succinctly stated in *Clark* v. *Los Angeles*, 160 California, 30, 39, "The express grant made by section 19 is of the privilege, franchise, or easement to place in the public streets of a city the conduits necessary or convenient for the business of supplying light or power to the city and its inhabitants. It may be accepted by any person, or by any company duly incorporated to engage in that business."

When the voice of the State declares that it is bound if its offer is accepted, and the question simply is with respect to the scope of the obligation, we should be slow to conclude that only a revocable license was intended. Moreover the provision plainly contemplated the establishment of a plant devoted to the described public service and an assumption of the duty to perform that service. That the grant, resulting from an acceptance of the State's offer, constituted a contract, and vested in the accepting individual or corporation a property right, protected by the Federal Constitution, is not open to dispute in view of the repeated decisions of this court. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650, 660; *New Orleans Water Works Co.* v. *Rivers*, 115 U. S. 674, 680, 681; *Walla Walla* v. *Walla Walla Co.*, 172 U. S. 1, 9; *Louisville* v. *Cumberland Telephone Co.*, 224 U. S. 649, 663, 664; *Grand Trunk Rwy. Co.* v. *South Bend*, 227 U. S. 544, 552; *Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 58, 65; *Boise Water Co.* v. *Boise City*, 230 U. S. 84, 90, 91. Dillon on Municipal Corporations, 5th ed., § 1242.

2. The controversy in the present case relates to the extent to which the grant had become effective through acceptance. It is not contended that the change in the constitution could disturb the company's rights in the streets used previous to the amendment; but it is insisted that such actual user measured the range of the acceptance of the grant and hence defined the limits of its operation.

In support of this view, the established and salutary rule is invoked that public grants are to be construed strictly in favor of the public; that ambiguities are to be resolved against the grantee. *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420, 546, 549; *Slidell* v. *Grand Jean*, 111 U. S. 412, 437; *Detroit Citizens' Rwy. Co.* v. *Detroit Railway*, 171 U. S. 48, 54; *Knoxville Water Co.* v. *Knoxville*, 200 U. S. 22, 34; *Blair* v. *Chicago*, 201 U. S. 400, 471. It has often been stated, as one of the reasons for the rule, that statutes and ordinances embodying such grants are usually drawn by interested parties and that it serves to frustrate efforts through the skillful use of words to accomplish purposes which are not apparent upon the face of the enactment. *Dubuque & Pacific R. R. Co.* v. *Litchfield*, 23 How. 66, 88; *Slidell* v. *Grand Jean, supra; Blair* v. *Chicago, supra.* But it must also be recognized that this principle of construction does not deny to public offers a fair and reasonable interpretation, or justify the withholding of that which it satisfactorily appears the grant was intended to convey. *Winona & St. Peter R. R. Co.* v. *Barney*, 113 U. S. 618, 625; *United States* v. *D. & R. G. Rwy. Co.*, 150 U. S. 1, 14; *Minneapolis* v. *Street Rwy. Co.*, 215 U. S. 417, 427. Here, the provision was presented by a constitutional convention for adoption by the people as the deliberate expression of the policy of the State in order to secure the benefits of competition in public service, and it will not be questioned that it must receive, as the state court said in *People* v. *Stephens* (62 California, p. 233), "a practical, common-sense construction."

There is no ambiguity as to the scope of the offer. It was not simply of a privilege to maintain pipes actually laid, but to lay pipes so far as they might be required in order to effect an adequate distribution. The privilege was defined as that "of using the public streets and thoroughfares thereof, and of laying down pipes and conduits therein, and connections therewith, so far as may be necessary for introducing into and supplying such city and its inhabitants either with gaslight, or other illuminating light, or with fresh water for domestic and all other purposes, upon the condition that the municipal government shall have the right to regulate the charges thereof."

The breadth of the offer was commensurate with the requirements of the undertaking which was invited. The service to which the provision referred was a community service. It was the supply of a municipality—which had no municipal works—with water or light. This would involve, in the case of water-works, the securing of sources of supply, the provision of conduits for conveying the water to the municipality, and the permanent investment in the construction of reservoirs with suitable storage capacity; and, in the case of gas-works, the establishment of a manufacturing plant on a scale large enough to meet the demands that could reasonably be anticipated. But water-works and gas-works constructed to furnish a municipality with water or light would, of course, be useless without distributing systems; and the right of laying in the streets the mains needed to carry the water or gas to the inhabitants of the community was absolutely essential to the undertaking as a practical enterprise. This, the constitutional provision recognized. It was clearly designed to stop favoritism in granting such rights, not to withhold them. It is not to be supposed that it was expected that water-works and gas-works of the character required to supply cities would be erected without grants of franchises to use the streets for laying the necessary

distributing pipes. *Boise Water Co.* v. *Boise City,* 230 U. S. 84, 91. The scheme of the constitutional provision was not to make it impossible to secure such grants, or to restrict the street rights to be acquired, but, as already stated, to end the existing abuses by making these grants directly through the constitution itself instead of permitting them to be made by the legislature or by municipalities acting under legislative authority. *People* v. *Stephens,* 62 California, 209.

In deciding upon the policy of making these direct grants it was for the State to determine their terms and their scope; it could have imposed whatever conditions it saw fit to impose. But it did not attempt to confine the privilege to particular streets or areas, or to make the laying of the necessary pipes conditional upon the renewal of the offer street by street, or foot by foot, as the pipes were put in the ground. The people of the State decided that local superintendence of the execution of the work, regulations and indemnity with respect to damages, and the continuing authority of the municipality to regulate rates, would be adequate protection. It was upon this basis that the State offered the privilege of laying pipes in the streets so far as might "be necessary for introducing into and supplying such city and its inhabitants" either with water or light as the case might be. The individual or corporation undertaking to supply the city with water or light was put in the same position as though such individual or corporation had received a special grant of the described street rights in the city which was to be served. Such a grant would not be one of several distinct and separate franchises. When accepted and acted upon it would become binding—not foot by foot, as pipes were laid—but as an entirety, in accordance with its purpose and express language. *Grand Trunk Rwy. Co.* v. *South Bend,* 227 U. S. 544, 555, 556.

It is urged that, in the absence of any provision for

formal or written acceptance, the only way the offer could be accepted was by use of the streets, and that for this reason the rights of the company could not extend beyond the length of its pipes in place. But this is to say that the offer as made could not be accepted at all; that the right to *lay* pipes could not in any event be acquired. It is to assume, despite the explicit statement of the constitutional provision, that the investment in extensive plants—in the construction of reservoirs, and in the building of manufacturing works—was invited without any assurance that the laying of the distributing system could be completed or that it could even be extended far enough to afford any chance of profit. It would be to deny the right offered, although essential to the efficacy of the enterprise, and in its place to give a restricted and inadequate right, which was unexpressed.                    ⸺

In view of the nature of the undertaking in contemplation, and of the terms of the offer, we find no ground for the conclusion that each act of laying pipe was to constitute an acceptance *pro tanto*. We think that the offer was intended to be accepted in its entirety as made, and that acceptance lay in conduct committing the person accepting to the described service. The offer was made to the individual or corporation undertaking to serve the municipality, and when that service was entered upon and the individual or corporation had changed its position beyond recall, we cannot doubt that the offer was accepted. *City Railway Co.* v. *Citizens R. R. Co.*, 166 U. S. 557, 568; *Grand Trunk Rwy. Co.* v. *South Bend, supra.* In this view, the grant embraced the right to lay the extensions that were needed in furnishing the supply within the city.

This construction of the constitutional provision is the only one that is compatible with the existence of the duty which it was intended, as it seems to us, that the recipient of the State's grant should assume. The service, as has been said, was a community service. Incident to the

undertaking in response to the State's offer was the obligation to provide facilities that were reasonably adequate. *Lumbard* v. *Stearns*, 4 Cush. 60; *Cumberland Tel. Co.* v. *Kelly*, 160 Fed. Rep. 316, 324; *Atlantic Coast Line R. R. Co.* v. *North Carolina Corp. Com'n*, 206 U. S. 1, 27; *People ex rel. Woodhaven Gas Co.* v. *Deehan*, 153 N. Y. 528, 533; Morawetz on Corporations, § 1129. It would not be said that either a water company or a gas company, establishing its service under the constitutional grant, could stop its mains at its pleasure and withhold its supply by refusing to extend its distributing conduits so as to meet the reasonable requirements of the community. But this duty and the right to serve, embracing the right under the granted privilege to install the means of service, were correlative.

In *People ex rel. Woodhaven Gas Co.* v. *Deehan, supra* (approved in *Illinois Central R. R. Co.* v. *Chicago*, 176 U. S. 646, 666) a grant of authority to lay conduits for conveying gas through the streets of a town, so as to render service to the people of the town, was held to extend as a property right not only to the streets then existing, but to those subsequently opened. The court said (p. 533): "It is well known that business enterprises such as the relator is engaged in are based upon calculations of future growth and expansion. A franchise for supplying gas not only confers a privilege, but imposes an obligation, upon the corporation to serve the public in a reasonable way. The relator is bound to supply gas to the people of the town upon certain conditions and under certain circumstances, and it would be most unjust to give such a construction to the consent as to disable it from performing its obligations. It cannot reasonably be contended that the relator is obliged to apply for a new grant whenever a new street is opened or an old one extended, as would be the case if the consent applied only to the situation existing when made. When the right to use the streets has been

VOL. CCXXXIII—14

once granted in general terms to a corporation engaged in supplying gas for public and private use, such grant necessarily contemplates that new streets are to be opened and old ones extended from time to time, and so the privilege may be exercised in the new streets as well as in the old."

As to the question of fact, the present case presents no controversy. It was averred, and not denied, that the works of the gas company were established and operated with the intent to furnish gas throughout the city, wherever needed, and that this enterprise had been diligently prosecuted; that a large investment had been made in a plant which was adequate to supply a much greater territory than that reached by the distributing mains when the amendment of 1911 was adopted; that the expense of this installation made it impossible to supply at a profit the limited territory contiguous to the streets then actually occupied by the company; and that if it were confined in its service to that territory it would sustain a constant loss. The company, by its investment, had irrevocably committed itself to the undertaking and its acceptance of the offer of the right to lay its pipes, so far as necessary to serve the municipality, was complete.

We conclude that the constitutional amendment of 1911, and the municipal ordinances adopted in pursuance thereof, were ineffectual to impair this right, and that the company was entitled to extend its mains for the purpose of distributing its supply to the inhabitants of the city subject to the conditions set forth in the constitutional provision as it stood before the amendment.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*