### SOUTHERN COUNTIES GAS CO. OF CALIFORNIA v. CITY OF LONG BEACH et al.

(District Court, S. D. California, S. D. February 13, 1924.)

1. **Statutes ⬛190—Rule as to construing specific terms, unmistakable in meaning, defining grant or privilege, stated.**

Where specific terms are used, which are unmistakable in their meaning, in defining a grant, privilege, or restriction, their application will be limited within the definition of the words themselves.

2. **Gas ⬛9—California Constitution held not to permit unrestricted use of streets for distributing gas.**

Though Const. Cal. art. 11, § 19, as it existed prior to 1911 allowing corporations or individuals to lay pipes in city streets for supplying the city and its inhabitants "with gaslight or other illuminating light" is to be liberally interpreted, and will permit the incidental use of gas for cooking and heating in homes, it does not permit the unrestricted use of the street for distributing gas for purely heat and power purposes.

3. **Injunction ⬛137(4)—Preliminary injunctions not granted in doubtful cases.**

Preliminary injunctions should not be granted in doubtful cases, especially where great damage will not result to the applicant because of withholding them.

4. **Gas ⬛9—Where conditions of parties as respects damages were evenly balanced, preliminary injunction refused.**

In a suit by a gas company for a permanent injunction to restrain the city from interfering with its work of extending gas mains, where the conditions affecting the parties as respects resulting damages were fairly balanced, a preliminary injunction was refused.

In Equity. Suit by the Southern Counties Gas Company of California against the City of Long Beach and others. On application for temporary injunction. Application denied, and preliminary restraining order, heretofore made, dissolved.

Clarke & Bowker, of Los Angeles, Cal., for plaintiff.

Burr A. Brown, City Atty., and Denio & Hart, all of Long Beach, Cal., for defendants.

⬛For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

JAMES, District Judge. Plaintiff corporation, in its verified bill of complaint filed herein, alleged that its predecessors in interest, prior to October 10, 1911, had engaged in the business of supplying to the inhabitants of the city of Long Beach gas for illuminating purposes, and that the plaintiff was engaged in the prosecution of that business, and that the consumers of its gas numbered 32,576; further, that it had entered into contracts with many of the inhabitants of said city for the furnishing of "gaslight," which contracts could not be carried out if the interference complained of as against the city was not prevented. It alleged that it maintained the necessary pipe lines through the public streets of said city, and had complied with and had offered to comply with all the regulations and requirements of the municipality affecting such use of the streets. It alleged that, complying with the requirements of the city's ordinance, it presented to the director of public service of the city, on the 18th day of January, 1924, an application for a permit to dig a trench on Water street in said city for the purpose of laying gas mains "to extend its system to supply the inhabitants of said city * * * with gaslight." It alleged that a permit was refused to be issued to it, and that it subsequently notified the city that it would proceed to make the excavation, and that such would be done under the supervision of the city's officers; that the city authorities threatened to arrest the employees of the plaintiff in the event it engaged in the prosecution of said work, claiming that by so doing an offense would be committed under the provisions of an ordinance of the said city forbidding the making of excavations in the public streets, except where written permit is secured from the commissioner of public works. Plaintiff prayed for a permanent injunction, restraining the city of Long Beach and its officers from interfering with it in its work of extending its gas mains. A preliminary restraining order was issued, and an order to show cause why the restraint should not be continued pending trial of the action was allowed.

Defendants, as evidence in opposition to the application, presented their verified answer, in which it was set forth that the gas main which the plaintiff was seeking to lay on Water street was not intended by the plaintiff to be used for the purpose of supplying the inhabitants of the city of Long Beach with "gaslight," but solely for the purpose of supplying gas for "fuel, heat and power," and particularly that plaintiff might supply a corporation engaged in furnishing electric light and power with gas for fuel, heating, and power purposes. Responding to the allegations of the answer, an affidavit was filed by the superintendent of the plaintiff corporation, in which the affiant stated that the pipe line sought to be constructed would be used to supply, not only the Edison Company, but would be "likewise connected with the existing distributing system, * * * and be used for" the purpose of supplying illuminating gas to the inhabitants of the city of Long Beach.

Prior to the amendment adopted by the people of California in 1911, the Constitution of the state contained in article 11 the following provision:

"Sec. 19. In any city where there are no public works owned and controlled by the municipality for supplying the same with water or artificial

light, any individual, or any company duly incorporated for such purpose under and by authority of the laws of this state, shall, under the direction of the superintendent of streets, or other officer in control thereof, and under such general regulations as the municipality may prescribe for damages and indemnity for damages, have the privilege of using the public streets and thoroughfares thereof, and of laying down pipes and conduits therein, and connections therewith, so far as may be necessary for introducing into and supplying such city and its inhabitants either with gaslight or other illuminating light, or with fresh water for domestic and all other purposes, upon the condition that the municipal government shall have the right to regulate the charges thereof."

[1, 2] Construing this provision, the Supreme Court of California declared its purpose in the main to be that competition should be encouraged in the public utility lines referred to in the provision, and monopolies prevented. This construction as a corollary required that the interpretation of the language used be liberal to make effectual the design of the people. Such a construction necessarily affected the application of the rule which requires that public franchises, whether arising out of constitutional or legislative grants, are subject to narrow construction as against the grantee and in favor of the granting power.

The broad question is presented as to whether the constitutional grant, the acceptance of which would result in a contract, allowing corporations or individuals to lay pipes and conduits in the public streets, "so far as may be necessary for introducing into and supplying such city and its inhabitants * * * with gaslight, or other illuminating light, * * *" contemplated that the streets might be so used, where the purpose was to distribute gas for every purpose whatsoever. If the terms "gaslight, or other illuminating light," had not been particularly used, it would be easy to conclude that the grant was general, and designed to meet every use, present and prospective, to which the gas to be distributed might be applied.

It is a common and accepted rule of construction that, where specific terms are used, which are unmistakable in their meaning, in defining a grant, privilege, or restriction, their application will be limited within the definition of the words themselves. Let us suppose that the plaintiff here was admittedly organized for the purpose of supplying gas to be used under steam boilers in manufacturing plants. That use would have no relation to the furnishing of "gaslight." Could it be reasonably argued that it could claim a franchise grant under the constitutional provision? The answer must be that such claim could not be maintained, unless the words of the Constitution are not to be taken as carrying their usual meaning. To reason otherwise would be to subvert specific terms to individual notions. A liberal interpretation, which, as has been suggested, is proper to be given to the language of the Constitution, would permit a construction which would prevent the franchise grant from being defeated, where the additional uses to which the gas might be put were purely incidental to the main use, to wit, that of furnishing light. Such a use is incidental, where the householder uses some part of the gas furnished to him for illuminating purposes to cook his meals or heat his rooms.

Another consideration which must be borne in mind is that the people, when they adopted the constitutional provision, adopted it having in view the then uses and demands for gas, and did not contemplate the vastly changed conditions affecting those matters which the growth in commercial industries has brought about. It may properly be asserted, and the fact is within the knowledge of every one, that if the public streets of a city are in this day to be open to the unrestricted use of every individual or corporation desiring to furnish gas to the large and increasing number of industrial establishments found in every large city, the convenience of the inhabitants and the right of the government to prevent such hardships will be interfered with to a far greater extent than would result where the right to excavate streets for the purpose specified in the Constitution, to wit, to lay pipes for the furnishing of gas for illuminating purposes, is exercised.

All of the California cases cited by counsel on both sides, as well as the case of Russell v. Sebastian, 233 U. S. 195, 34 Sup. Ct. 517, 58 L. Ed. 912, L. R. A. 1918E, 882, Ann. Cas. 1914C, 1282, have been given careful consideration. Concluding, as I do, that the constitutional grant is not one for unrestricted use as affecting the distribution of gas, the question then to be determined is as to whether, understanding the issues as they have been stated, the discretion of the court should be exercised in the direction of allowing the injunction to continue in force pending the trial in the case. If it should be established that the principal purpose of the plaintiff in extending its mains on Water street is to enable it to furnish gas for generating purposes in an electrical plant of an independent establishment, then it must be concluded that the city might properly refuse to allow its streets to be excavated for that purpose.

[3, 4] Preliminary injunctions are not to be granted in doubtful cases, especially where great damage will not result to the applicant because of the withholding of them. The conditions as affecting the parties here in the matter of resulting damage may be said to be fairly balanced. On the one hand, the plaintiff may suffer loss by being prevented from securing an earlier return from prospective consumers of gas to be supplied by the new line; and, on the other hand, if the work is to be allowed to proceed under an injunction restraining the city from making interference, then public inconvenience may result and possible damage ensue. which cannot be compensated for under regulations as to methods to be used in prosecuting the extension work. Under the circumstances, I think that the preliminary injunction should not be granted upon the showing here made by the plaintiff, considering especially that direct issue is made under oath by the defendants as to the essential things required to be shown to entitle the plaintiff to the ultimate relief prayed for.

An order will be entered, denying the application of the plaintiff for a temporary injunction, and dissolving the preliminary restraining order heretofore made.