### NORTHERN PAC. RY. CO. v. UNITED STATES.
**Civ. Nos. 2922–2925.**

United States District Court, D. Minnesota, Fourth Division. Oct. 19, 1951.

M. L. Countryman, Jr., and Conrad Olson, of St. Paul, Minn., for plaintiff.

C. U. Landrum and Mr. James J. Giblin, of St. Paul, Minn. (Mr. Armistead B. Rood, Attorney, Department of Justice, Washington, D. C., of counsel), for the United States.

NORDBYE, Chief Judge.

The cases involve the construction of the provisions of Section 321(a) of the Transportation Act of 1940, 49 U.S.C.A. § 65(a), which entitles "military or naval property of the United States moving for military or naval and not for civil use" to land-grant rates. Plaintiff seeks to recover certain balances claimed to be due from the Government by reason of certain freight shipments of military or naval property of the United States arriving from overseas and shipped on government bills of lading marked "Military". Plaintiff in the first instance billed the United States at full commercial rates on all of the shipments. The Government paid the bills, but later deducted the sums sought to be recovered herein from subsequent bills tendered by plaintiff so as to pay land-grant rates only on the shipments involved herein.

The shipments were made in 1944 and 1945, and after coming from overseas, were shipped from Seattle and other western points over plaintiff's railway lines to certain salvage and redistribution centers of the Government. The property thus transported by plaintiff consisted of quartermaster or ordnance material, such as automobile parts, automobiles, tents and canvas, tobacco and cigarettes, scrap iron, clothing, canned goods, sawing machines, construction equipment, concrete mixing machines, wooden huts, and miscellaneous junk. They were all military or naval property of the United States. They were shipped by a military or naval officer of the United States to the salvage and redistribution centers, and after inspection, a certain portion of the goods were reconsigned, either with or without rehabilitation, for naval or military use. Goods and merchandise which were to be discarded after inspection were sold as army or navy surplus.

Plaintiff concedes that the portions of the shipments after inspection actually reconsigned for military or naval use are subject to land-grant rates. But plaintiff asserts and contends that the goods which were discarded for civilian use and disposition were therefore shipped for civil use, and hence are not entitled to land-grant rates. The Government's position is that, under these facts, the land-grant rates are applicable to all such materials thus shipped.

The inspection of this property and its reconditioning and rehabilitation for further military purposes, so far as that was practical and feasible, was determined and processed by the military and naval forces of the United States. The future use of this property, either for military use or civilian use as war surplus, was a military responsibility. The purpose of the shipment was to permit the fulfillment of that responsibility. The shipments were made and completed before any decision was made as to the ultimate use of the goods. For aught anyone knew at the time of the shipments, all of the material might be allocated for future military purposes. That the property, therefore, was in military use at or during the shipment, as that term is usually understood, seems clear. These goods never lost their military status during shipment.

Generally speaking, the salvaging, reconditioning and rehabilitation of military and naval stores is a function which is performed in furtherance of the war effort. And the military stores, which were not reconsigned for military use, were sold as war surplus and the funds obtained therefrom were available for future government use. Moreover, it is fair to assume that the dominant purpose of the shipment was to salvage as much of the property as possible for military purposes. The appar-

ent object of the salvage center was to save and preserve military stores for further military use. The war had not ended, in that the last shipment, according to the petitions herein, was in January, 1945. None of the goods lost their military status until they were separated from military use after the shipment had ended and then allocated for civilian use. To attempt retroactively to alter their status, as plaintiff assumes to do, is improper and without support under the admitted facts.

■ Furthermore, there is a practical problem which arises in determining the applicable tariff rates. The character and status of the shipment of military stores by common carrier should be determined at the time of the shipment. This was the view of the court in Sonken-Galamba Corp. v. Union Pacific R. Co., 10 Cir., 145 F.2d 808, 812, wherein the court said, " * *. * it is made plain that the nature and character of each shipment at the time tendered determines its status for rate purposes, and the use which may be subsequently made of the material does not control the question * * *."

The language above was used with reference to the interpretation of an ordinary tariff rate and not to a situation under the land-grant statutes, but it is not inappropriate herein. In other words, there should be a definiteness and finality in the character of these goods at the time that they were transported, so far as the applicable rate is concerned, and that should not be dependent upon some future contingency. Plaintiff's theory of tracing the items in these shipments which were finally discarded and sold for civilian use and determining the commercial rate thereon illustrates and emphasizes the necessity of applying the rule above enunciated.

■ That the term "military or naval use" should be broadly construed seems evident from the language of the Supreme Court in Northern Pacific R. Co. v. United States, 330 U.S. 248, 257, 67 S.Ct. 747, 752, 91 L.Ed. 876, wherein the court in considering the question of the applicability of land-grant rates to certain shipments, stated, " * * * But it is a familiar rule

that where there is any doubt as to the meaning of a statute which 'operates as a grant of public property to an individual, or the relinquishment of a public interest,' the doubt should be resolved in favor of the Government and against the private claimant. Slidell v. Grandjean, 111 U.S. 412, 437, 4 S.Ct. 475, 487, 28 L.Ed. 321. See Southern Ry. Co. v. United States, 322 U.S. 72, 76, 64 S.Ct. 869, 872, 88 L.Ed. 1144. That rule has been applied in construing the reduced rate conditions of the land-grant legislation. Southern Pacific Co. v. United States, 307 U.S. 393, 401, 59 S.Ct. 923, 928, 83 L.Ed. 1363; Southern Ry. Co. v. United States, supra. That principle is applicable here where the Congress, by writing into § 321(a) an exception, retained for the United States an economic privilege of great value. The fact that the railroads, including petitioner, filed releases of their land-grant claims in order to obtain the benefits of § 321(a) is now relied upon as constituting full consideration for the rate concession. It is accordingly argued that the railroads made a contract with the United States which should be generously construed. Cf. Russell v. Sebastian, 233 U.S. 195, 205, 34 S.Ct. 517, 520, 58 L.Ed. 912. The original land-grants resulted in a contract. Burke v. Southern Pacific R. Co., 234 U.S. 669, 680, 34 S.Ct. 907, 911, 58 L.Ed. 1527. Yet, as we have seen, they were nonetheless public grants strictly construed against the grantee. The present Act, though passed in the interests of the railroads, was in essence merely a continuation of land-grant rates in a narrower category. Therefore, it, too, must be construed like any other public grant."

■ The "use" contemplated at the time and during shipment of these goods was not a civilian use. That was not the dominant purpose of the transportation. The primary purpose of the transportation. The primary examination of these goods by military and naval officials so that they might determine whether a part or all should be rehabilitated and reconsigned for military purposes. Such an object persuasively establishes that the shipments were made for military use as that term is used in the statutes. It is

32

not necessary that all of the goods were in fact put to military use.

Findings of fact and conclusions of law in favor of the defendant on the stipulation of facts may be presented. An exception is reserved.