In the Matter of the Application of
CITY & COUNTY OF HONOLULU
CORPORATION COUNSEL
For the Valuation of the Physical and
Tangible Property of the Honolulu Rapid
Transit Company, Limited

No. 5226

MARCH 8, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

This is an appeal of a Decision and Order of the Public Utilities Commission (PUC), No. 2793, dated July 20, 1971.

The City and County of Honolulu (City) filed before the PUC a petition for valuation of the physical and tangible property of the Honolulu Rapid Transit Company, Limited (HRT), for the purpose of acquiring said property. The petition was filed pursuant to the provisions of Section 20, Act 186, S.L.H. 1921, as amended by Act 300, S.L.H. 1967.

A complete presentation of PUC's Decision and Order would be helpful:

## DECISION AND ORDER [No. 2793]

This matter was initiated by a Verified Petition of the City and County of Honolulu, hereinafter called "Petitioner", for valuation of the physical and tangible property of the Honolulu Rapid Transit Company, Limited, hereinafter called "Respondent", with a view towards acquisition of same. The Verified Petition was filed pursuant to the provisions of Section 20, Act 186, S.L.H. 1921, as amended by Act 300, S.L.H. 1967, on September 8, 1970.

Proceedings relating to this matter were also considered in the State and Federal Courts.

A Petition for Declaratory Judgment and Motion for Preliminary Injunction was filed in the First Circuit Court and they were, after a hearing, dismissed and denied on October 20, 1970. Appeals therefrom were dismissed by the Supreme Court of Hawaii on June 8, 1971.

In Civil No. 70-3275, in the United States District Court for the District of Hawaii, Respondent's complaint based upon theories of violation of civil rights, deprivation of property without just compensation and without due process of law, denial of equal protec-

tion of law, and for a declaratory judgment concerning Act 186, among others, was dismissed and denied on January 13, 1971. Appeals therefrom are pending in the United States Court of Appeals for the Ninth Circuit.

Prehearing and regular hearings were held over a period of several weeks, with ample opportunity being accorded the parties to the matter.

On January 22, 1971, this Commission issued Order 2696 herein, denying Respondent's Motion to Dismiss, after due hearing and filing of memoranda.

Act 186, S.L.H. 1921, was passed by the territorial legislature and approved by Congress, and granted an open-end special privilege to Respondent to operate a street railway and connecting buses or other vehicles. Also included in the franchise were powers of eminent domain and other provisions for the protection of the franchise.

Section 20 of Act 186 gave a right to the City and County of Honolulu to purchase and operate the company system. It spelled out the procedure to be followed in valuation of the system for purchase.

Even a cursory reading of this Section shows that valuation was to be done in a manner other than in eminent domain proceedings. Respondent's arguments seeking to place the purchase here involved under eminent domain procedures fly in the face of the clear terms of Section 20 which Respondent knowingly and willingly accepted in 1922.

The following portion of Section 20 is a key paragraph in this matter:

> "The amount to be paid to the company for such purchase shall be determined by the public utilities commission; but such amount shall in no case exceed the actual cost of the physical property thereof, or the actual value of the tangible property so purchased; in both cases, less its

bonded and all other debts and liabilities. The value of the franchise or good will or any other intangible element shall not be considered in determining the amount to be paid."

This portion establishes two methods of valuation for two different classes of property. Actual cost is mandated to be the maximum for physical property, land and improvements — property which cannot be intangible. Actual value is mandated to be the maximum for tangible personal property. And no consideration is to be given to intangible personal property such as "going concern" value. The words "tangible" and "intangible" are used only when personal property is involved, for these [sic] can never be intangible real property.

These concepts are clear and should be given their ordinary meaning.

Applying these concepts and based upon the evidence adduced, the oral presentations of the parties and the various memoranda filed by the parties, the Commission finds, concludes, decides and orders as set forth hereinbelow.

## FINDINGS OF FACT

1. The Petitioner is a duly organized and existing municipal corporation under the laws of the State of Hawaii.

2. The Respondent is a duly organized and existing corporation under the laws of the State of Hawaii.

3. Respondent was duly authorized by the territorial legislature to operate as a public utility, as more particularly set forth in Act 186, S.L.H. 1921, as amended.

4. Petitioner requested this Commission to set a value on the physical and tangible property owned by Respondent for purposes of purchase.

5. The original cost of physical properties and the actual value of tangible properties as agreed by the parties in the Stipulation filed March 8, 1971, as amended by Stipulation filed May 14, 1971, are reasonable amounts.

6. The actual cost of the physical properties owned by Respondent and used and useful for public utility purposes are listed below and total $970,704.00:

- (a) T.M.K. 2-1-42-4 (Fernhurst property; between King and Hotel Streets; 98,294 sq. ft.) $360,660.00
- (b) T.M.K. 2-1-42-11 (Main plant premises; between Hotel and Beretania Streets; 166,980 sq. ft.) $98,689.00
- (c) T.M.K. 1-2-14-31, 1-2-14-32, 1-2-14-33, 1-2-14-34 (Umi Street property; Umi Street; 12,800 sq. ft.) $32,746.00
- (d) Improvements $478,609.00

7. The actual value of the tangible properties, as of October, 1970, owned by Respondent and used and useful for public utility purposes are listed below and total $1,947,011.00:

| | | |
|---|---|---:|
| (a) | Materials and Supplies | $ 423,544.00 |
| (b) | Fare Collection Equipment | 34,571.00 |
| (c) | Communications Equipment | 6,015.00 |
| (d) | Office Furniture, Machines & Equipment | 43,680.00 |
| (e) | Shop and Garage Equipment | 41,826.00 |
| (f) | Service Cars and Equipment | 11,746.00 |
| (g) | Revenue Vehicles | 1,382,169.00 |
| (h) | Bus Washer | 1,800.00 |
| (i) | Cyclone Cleaner | 1,660.00 |

8. The properties listed above and sought to be purchased are not subject to any bonded or other indebtedness of Respondent.

## CONCLUSIONS OF LAW

1. Section 20, Act 186, S.L.H. 1921, as amended, grants to Petitioner the right to acquire the properties of Respondent used and useful for public utility purposes.

2. Said Section 20 reposes jurisdiction in this Commission to determine the amounts to be paid to Respondent for the purchases provided therein.

3. Acceptance of Act 186, as properly approved, created a franchise, with all the terms and conditions therein binding upon Respondent.

4. The following definitions apply to the terms used in Act 186:

(a) "Actual cost" means original cost;
(b) "Physical property" means real property;
(c) "Actual value" means fair market value;
(d) "Tangible property" means property other than physical property as defined above;
(e) "Franchise or good will or any other intangible element" means and includes "going concern" value.

## DECISION

Based upon all of the evidence adduced, the legal memoranda filed herein, the oral arguments of the parties, and the findings and conclusions above, it is the Decision of this Commission that:

1. Petitioner's proposed findings of fact are ruled upon as follows:

(a) 1, 2, 3, 4, 5, 7, 8, 9, and 10 are approved;
(b) 6 is approved with the insertion of a reference to improvements;

2. Respondent's proposed findings of fact are ruled upon as follows:

(a) I and XIII are approved;

(b) III, IV, V and XIV are generally approved;

(c) I is approved with the omission of "irrevocably" in line 1 thereof, and insertion of a reference to Act 300, S.L.H. 1967, after the citation of Act 186, S.L.H. 1921;

(d) VI is approved with the exclusion of all words following the words "together with" in line 4 thereof;

(e) VIII is approved with the exclusion of the first sentence thereof;

(f) VII, IX, X, XI and XII are disapproved.

3. Respondent's alternative Motion that its construction of Section 20 as set forth in the Memorandum attached to its Motion filed on January 5, 1971, be upheld is denied;

4. That the amount to be paid to Respondent for the purchase of its properties used and useful for public utility purposes is $2,917,715.00 ($970,704.00 for physical properties; $1,947,011.00 for tangible properties).

## ORDER

IT IS HEREBY ORDERED that the amount to be paid to Respondent for the purchase of its properties used and useful for public utility purposes is $2,917,715.00.

Among the findings of fact proposed by HRT, but rejected by PUC in its decision, were the following numbered paragraphs:

## VI

The property of HRT which the City is seeking to acquire consists of all the properties listed in the STIPULATION made March 8, 1971, as amended by the STIPULATION made May 14, 1971, both

having been filed in this proceeding, together with the labor force and personnel of HRT, and all of the systems, procedures, records and other elements which are required to operate the utility as a going concern.

[Note: The PUC rejected only "all words following the words 'together with' ".]

## VII

The property of HRT listed in said STIPULA-TIONS and the property associated with the going concern value have been used and are useful for public utility purposes, except as noted in paragraph VIII.

## VIII

The real property designated by T.M.K. 2-1-42-4 (between King and Hotel Streets) is not used and useful for public utility purposes. This property originally cost $360,660 and has an agreed fair market value of $1,863,600.

[Note: The PUC rejected only the first sentence of paragraph VIII.]

## IX

The actual cost of the property of HRT listed in said STIPULATIONS and which is used and useful for public utility purposes is $5,313,438.

## X

The actual value of the property listed in said STIPULATIONS and which is used and useful for public utility purposes is $6,227,311.

## XI

The going concern value of HRT which the City has acquired and will acquire is $1,530,218.

## XII

The actual value of the property of HRT which is used and useful for public utility purposes and which the City is acquiring by this proceeding is $7,757,529.

The PUC also rejected HRT's proposed construction of Section 20.

The PUC, in its decision, approved the following pertinent proposals of findings of fact of the City, to-wit:

3. That the Respondent was duly authorized by the Legislature of the Territory of Hawaii to operate as a public utility in the conduct of mass transportation of persons in areas of Oahu, as more particularly set forth in the franchise granted to and accepted by the Respondent and effective on the 23rd day of February, 1922.

4. That said franchise did not grant the Respondent exclusive rights to conduct the business set forth thereunder, but that for approximately fifty years the Respondent has enjoyed the benefits of a virtual monopoly in fact without competition in the carriage of persons in the mass transportation business.

5. That the Petitioner has, pursuant to resolutions duly adopted by the City Council, requested the Public Utilities Commission to set a value on the physical and tangible property owned by the Respondent.

6. That the physical properties owned by Respondent are as follows:

(a) Main plant premises on Alapai Street, Tax Map Key: 2-1-42-11 (166,980 sq. ft.)

(b) Fernhurst property, Tax Map Key: 2-1-42-4 (98,294 sq. ft.)

(c) Umi Street property, Tax Map Key: 1-2-14-

31, 1-2-14-32, 1-2-14-33 and 1-2-14-34 (12,800 sq. ft.)

[Note: paragraph 6 was approved with the insertion of a reference to improvements.]

7. That the tangible properties of Respondent consist of:
   (a) Materials and Supplies
   (b) Fare Collection Equipment
   (c) Office Furniture, Machines and Equipment
   (d) Shop and Garage Equipment
   (e) Communication Equipment
   (f) Service Cars and Equipment
   (g) Revenue Vehicles
   (h) Bus Washer
   (i) Cyclone Cleaner

8. That both the actual cost and the actual value of the physical properties are $970,704.00 and $6,143,900.00, respectively, as agreed by the parties in the stipulation filed March 8, 1971, as amended by Stipulation filed May 14, 1971.

9. That both the actual cost and the actual value of the tangible properties are $4,703,394.00 and $1,947,011.00, respectively, as agreed by the parties in the Stipulation filed March 8, 1971, as amended by Stipulation filed May 14, 1971.

10. That all of said properties, both physical and tangible, hereinabove described, are used and useful for public utility purposes.

## ISSUES

Appellant first claims that the PUC erred in concluding that acceptance by HRT of Act 186, S.L.H. 1921, created a franchise, with all the terms and conditions therein binding upon HRT; that Sections 4 and 18, Article I of the Constitution of the State of Hawaii forbid the

State and its instrumentalities from taking private property for public use without the payment of just compensation.

Appellant further claims that, in construing Section 20 of Act 186, S.L.H. 1921, the PUC erred in finding that (1) the words "physical property" and "tangible property" mean real property and personal property, respectively; and (2) the words "franchise or good will or any other intangible element" include going concern value.

## STATUTE

Pertinent parts of Act 186, S.L.H. 1921, are:
It is entitled:

AN ACT TO AMEND AN ACT ENTITLED "AN ACT TO AUTHORIZE AND PROVIDE FOR THE CONSTRUCTION, MAINTENANCE AND OPERATION OF A STREET RAILWAY OR RAILWAYS IN THE DISTRICT OF HONOLULU, ISLAND OF OAHU," ENACTED BY THE LEGISLATURE OF THE REPUBLIC OF HAWAII, JULY SEVENTH, ONE THOUSAND EIGHT HUNDRED NINETY-EIGHT, AND GRANTING A FRANCHISE TO THE HONOLULU RAPID TRANSIT AND LAND COMPANY TO OPERATE A STREET RAILWAY IN THE DISTRICT OF HONOLULU, PROVIDING FOR THE OPERATION OF THE SAME AND PROVIDING FOR THE PURCHASE OF THE SAME BY THE CITY AND COUNTY OF HONOLULU.

Section 20 of Act 186, S.L.H. 1921, provides:

Section 20. Purchase by City and County of Honolulu. City and county authorized to purchase and operate. At any time after authorization therefor by a majority of the registered voters of the City and County of Honolulu voting thereon at an election

held in manner and form and under the terms and conditions as may be hereafter provided for by the legislature of Hawaii for this purpose, the City and County of Honolulu, or its successors, may, upon not less than six months' notice in writing to the company, acquire the property of the company used and useful for public utility purposes by paying to it the amount hereinafter provided, and assuming the bonded and all other debts and liabilities of the company at the date of said purchase.

The amount to be paid to the company for such purchase shall be determined by the public utilities commission; but such amount shall in no case exceed the actual cost of the physical property thereof, or the actual value of the tangible property so purchased; in both cases, less its bonded and all other debts and liabilities. The value of the francise or good will or any other intangible element shall not be considered in determining the amount to be paid.

The valuation for the purpose of purchase shall be determined by the commission on the request of the board of supervisors prior to the election, provided, however, that such valuation shall be increased or diminished to correspond to the actual physical changes in the property of the company between the date of the valuation and the date of the actual purchase, the same to be determined by the commission.

Either the company or the purchaser may appeal to the supreme court of Hawaii from the decision of the commission by filing a written notice of appeal with the commission within five days after the decision is rendered and served on the company and the City and County of Honolulu. It shall be the duty of the commission immediately to certify up to the supreme court the record of its proceedings showing in such certificate the valuation claimed by the com-

pany, the valuation claimed by the purchaser, and the valuation as determined by the commission. Such certificate shall be accompanied by copies of all papers, documents, and evidences upon which the decision was based and a copy of such decision. Upon such appeal the supreme court may in its behalf take or require further evidence to be introduced by either party.

Within six months after the determination of the purchase price the same shall be paid to the company, and thereupon the franchise granted hereby shall cease and determine, and all the property of the company so valued shall become the property of the purchaser without any further conveyance or assignment; but the company shall make all such further conveyances and assignments as may be desired by the purchaser and approved by the commission or the said court on appeal.

The City and County of Honolulu or its successors, is hereby given the right under the conditions aforesaid to purchase, hold and operate the street railway system or systems so purchased and said city and county and its successors shall have all powers incidental thereto.

The City and County of Honolulu may finance the purchase of the property of said company by issuing bonds secured by said property and said bonds shall be a first charge on the income therefrom. Said bonds may be issued prior to the time of purchase containing provisions that they will become secured as herein specified as of the date of payment of the purchase price but prior thereto shall be a lien upon the general revenues of the city and county. Said city and county may, at its option, make said bonds a lien on both the income of the railway and the general revenues of the city and county, notwithstanding any limitation as to amount of indebtedness now or

hereafter existing and the amount of said bonds shall not be considered to limit the creation of other indebtedness by said city and county as now or hereinafter provided by law. Provided, however, that all revenues derived from time to time from said railway so purchased shall be paid into the treasury of said city and county and there held as a special fund for the following purposes for which alone it shall be expended:

1. The operation and maintenance of said railway.

2. Interest on the bonds issued for such purchase and bonded or other indebtedness of the company assumed by the City and County of Honolulu at the time of such purchase.

3. A sinking fund for the payment of said bonds and said assumed bonds and said other indebtedness for which purpose there shall be set aside each year not less than such a sum that the aggregate of the sums so set aside with interest thereon compounded annually at the rate of interest specified in the said bonds and said other indebtedness would amount to the par value of the said bonds and said other indebtedness at maturity nor more than such a sum that the aggregate of such sums with such interest would amount to the par value of the said bonds or said other indebtedness when redeemable.

4. The extension and improvement of said railway.

Section 21 of Act 186, S.L.H. 1921, provides:

Section 21. Amendment, alterations or repeal. This Act may be amended or altered in whole or in part or repealed by the legislature of the Territory of Hawaii with the approval of Congress.

Section 22 of Act 186, S.L.H. 1921, provides:

Section 22. Effective date. This Act shall take effect when the company shall notify the Governor of the Territory of Hawaii in writing that it has accepted the terms hereof by an affirmative vote of the holders of two-thirds of the issued capital stock, provided such notice is so given within six months after the approval of this Act by Congress, otherwise this Act shall become null and void; such approval of Congress to be secured within two years from the approval of this Act by the Governor of the Territory of Hawaii.

[Note: Act 186, S.L.H. 1921, was amended and rewritten to include all prior amendments to date by Act 133 [E-192], S.L.H. 1947.]

In 1967 the legislature enacted Act 300, An Act Relating to Mass Transit System, wherein Section 2 thereof provides:

Section 2. Provision relating to purchase. Any franchise heretofore granted by the legislature authorizing the transportation of persons or property, or both, by motor vehicle limited to one county or a portion of a county is hereby amended as follows with respect to the procedure for the purchase of the property of the company holding the franchise (hereinafter called the "company") :

(a) The legislative body of the county may by ordinance authorize or provide for the purchase of the property of the company. No authorization by referendum nor any legislative act authorizing such referendum shall be required, and all references to such referendum or legislative act are hereby deleted from said franchise.

(b) Notice by the county to the company of the county's intention to acquire the property of the company shall not be required, and all references to such notice are hereby deleted from said franchise.

Section 3 thereof provides:

Section 3. Effect of amendment. The amendments provided in section 2 of this Act shall not be construed to amend or affect any other provision of the franchise referred to in said section 2.

## OPINION

### I. FRANCHISE AGREEMENT UNDER ACT 186, S.L.H. 1921.

We are of the opinion that the PUC correctly concluded that acceptance of Act 186, S.L.H. 1921, by HRT created a franchise agreement between the parties herein, subject to all the terms and conditions in said Act 186.

The record is clear that HRT voluntarily, without any coercion whatsoever, chose to accept, under Act 186, S.L.H. 1921, the franchise, unlimited as to time, and has, for nearly fifty years, reaped the benefits and profits of a privilege specially granted by the sovereign, the sovereign originally being the Territory and later the State. Initially HRT was authorized to conduct a public transportation business by the legislature of the Republic of Hawaii by Act 69, Statutes of 1898. This original franchise would have expired in June, 1929, or June, 1930, depending on whether one followed the then government's or the company's viewpoint. An internal communication of HRT entitled "Rapid Transit Directors Recommend Acceptance of Franchise", dated February 3, 1922, and filed with PUC in the instant case, discusses in detail the advantages and benefits HRT could obtain if HRT were to accept the franchise under said Act 186. The record shows a deliberate, business-like, knowledgeable and voluntary decision on the part of HRT in relinquishing its old franchise and accepting the new under said Act 186.

Said Act 186 is, without doubt, a grant of franchise—

a grant of a special privilege—and the sovereign has ample authority to impose the various terms and conditions of said Act 186 on the voluntary recipient of the franchise. *Southern Pacific Co.* v. *Portland,* 227 U.S. 559 (1913); *Victory Cab Co.* v. *City of Charlotte,* 234 N.C. 572, 68 S.E.2d 433 (1951).

Clearly, *Frost & Frost Trucking Co.* v. *Railroad Commission of California,* 271 U.S. 583 (1926), the case relied upon by HRT as authority for its argument that an individual or corporation cannot be forced by a state to waive a constitutional right in exchange for the grant by the state of a privilege, is inapplicable in this instance.

The acquisition of HRT property under the franchise is not a condemnation proceeding. The City is simply initiating the purchase of HRT property under the terms and conditions of the franchise agreement or contract made in 1921 under Act 186, S.L.H. 1921. *Albrecht* v. *United States,* 329 U.S. 599 (1947); *Janes* v. *City of Racine,* 155 Wis. 1, 143 N.W. 707 (1913).

We are of the opinion that the paramount question before this court is whether the decision and order of PUC conforms with the terms and conditions of said Act 186.

## II. CONSTRUCTION OF SECTION 20 OF ACT 186.

*Physical Property versus Tangible Property*

The dispute of the parties herein is centered in paragraph two of Section 20, which provides as hereinabove stated:

> The amount to be paid to the company for such purchase shall be determined by the public utilities commission; but such amount *shall in no case exceed the actual cost of the physical property* thereof, or the *actual value of the tangible property* so purchased; in *both cases,* less its bonded and all other debts and liabilities. The *value of the franchise or good will or*

*any other intangible element shall not be considered* in determining the amount to be paid. (Emphasis added.)

In construing said paragraph of Section 20 the PUC gave the following interpretations:

(a)  "Actual cost" means original cost;
(b)  "Physical property" means real property;
(c)  "Actual value" means fair market value;
(d)  "Tangible property" means property other than physical property as defined above;
(e)  "Franchise or good will or any other intangible element" means and includes "going concern" value.

HRT, the appellant, urges upon this court as follows:

That there is no distinction between the terms "physical" and "tangible" property, that they are synonymous, and where the statute is ambiguous by providing in the disjunctive two valuation methods the statute must be construed against the one who drafted the statute, the State in this case, and that all real and tangible properties, being allegedly synonymous, must be valued on the actual value or fair market value criteria.

We cannot accept this argument and must concur with the substance of PUC's determination that said Section 20 "establishes two methods of valuation for two different classes of property. Actual cost is mandated to be the maximum for physical property, land and improvements—property which cannot be intangible. Actual value is mandated to be the maximum for tangible personal property. . . ."

It is a cardinal rule of statutory construction that a statute ought upon the whole be so constructed that, if it can be prevented, no clause, sentence or word shall be superfluous, void, or insignificant. *Application of*

*Island Airlines, Inc.,* 47 Haw. 87, 112, 384 P.2d 536, 565 (1963); *State* v. *Taylor,* 49 Haw. 624, 425 P.2d 1014 (1967). Thus, in order to give effect to the phrase "in both cases" as provided in Section 20, it was proper for PUC to construe Section 20 as providing two completely different methods of valuation with different meanings to the terms "physical" and "tangible" property. We are of the opinion that the disjunctive "or" in the context as used in Section 20 actually imparts the meaning of the conjunctive "and". The sense of a word which harmonizes best with the whole context of the statute and promotes in the fullest manner the apparent policy and objects of the legislature must be adopted. *Samuel Mahelona Memorial Hospital* v. *County of Kauai,* 46 Haw. 260, 377 P.2d 703 (1962). *See* HRS § 1-18.

We are of the opinion that the statutory construction made by PUC is proper so long as the construction is warranted by the record and is reasonable. *Unemployment Compensation Commission of Alaska* v. *Aragon,* 329 U.S. 143 (1946); *Barlow* v. *Collins,* 397 U.S. 159 (1970).

There is nothing in the legislative history of Act 186 or of prior legislation which would be helpful or be dispositive in construing the meaning of "physical property" and "tangible property".

HRT alleges that no evidence was adduced to support PUC's concept of the ordinary meaning of "physical property" and "tangible property". We disagree. The record does reflect that the ordinary meaning of the phrases in question as determined by PUC was a reasonable one, notwithstanding HRT's presentation of other meanings of the phrases in issue. There was a rational basis for the statutory interpretation made by PUC.

Furthermore, the long and well established rule of construction in all grants of special rights or privileges by the government to private individuals is that the words

of the privilege granted (franchise herein) are construed strictly against the grantee. *City of Mitchell* v. *Dakota Central Telephone Co.*, 246 U.S. 396 (1918); *Los Angeles County Flood Control District* v. *Southern California Edison Co.*, 51 Cal. 2d 331, 333 P.2d 1 (1958). And where the terms of the franchise are uncertain and reasonably susceptible to multiple meanings or if the provisions of the franchise are conflicting or ambiguous, the terms of the franchise are construed favorably to the public interests. *Russell* v. *Sebastian*, 233 U.S. 195 (1914); *Southern California Gas Co.* v. *City of Los Angeles*, 50 Cal.2d 713, 329 P.2d 289 (1958).

Thus, the several arguments made by HRT are without merit.

We note that the parties stipulated to the values of real and personal properties and to the meanings of the terms "actual cost" and "actual value", so that as to those terms there is no dispute on this appeal.

*Going Concern Value*

HRT alleges that PUC erred in denying HRT's claim for compensation for "going concern value". We are of the opinion that HRT's claim is without merit. The provision of said Section 20 providing ". . . the value of the franchise or good will *or any other intangible element shall not be considered* in determining the amount to be paid" (emphasis added), is too clear and unequivocal to leave any room for ambiguity and construction as advocated by HRT.

The decision and order of PUC is affirmed.

*Howard K. Hoddick* (*Peter G. Wheelon* with him on the briefs; *Anthony, Hoddick, Reinwald & O'Connor* of counsel) for appellant.

*Robert M. Ehrhorn, Jr.,* Deputy Corporation Counsel (*Paul Devens,* Corporation Counsel, of counsel) for appellee.