CITY OF TRAVERSE CITY *v.* CONSUMERS
POWER COMPANY.

1. ELECTRICITY—FRANCHISES—STATUTES—USE OF STREETS.

An electric power company exercising a municipal franchise in the streets of a city at time of enactment of statute granting such companies authority to construct and maintain lines of wires and poles in the public streets of cities of the State may claim the statutory right although it also claimed the privileges granted by the municipal ordinance and franchise and need not disclaim authority under the franchise from the city in order to entitle it to exercise the power conferred by statute; the franchise and the statute not ΄being inconsistent (PA 1905, No 264).

2. SAME—FRANCHISES—STATUTES—ELECTION TO OCCUPY STREETS.

An electric power company's maintenance and operation of distribution system upon streets of plaintiff city under an extended franchise which had been granted while State statute was in effect granting such companies authority to construct and maintain lines of wires and poles in the public streets of cities of the State does not, in effect, constitute an election to occupy the city streets under the franchise as the company is not required to elect as to whether it was occupying the city streets in pursuance of the statute or in pursuance of the municipal franchise (PA 1905, No 264).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 18 Am Jur, Electricity § 8.
[3] 18 Am Jur, Electricity §§ 21, 23, 32.
[4] 18 Am Jur, Electricity § 12.
[5, 6] 18 Am Jur, Electricity § 7 *et seq.*
[7, 8] 18 Am Jur, Electricity § 32.
[10] 3 Am Jur, Appeal and Error § 814.
[11] 18 Am Jur, Electricity § 13.
[12] 18 Am Jur, Electricity § 9.
[13] 18 Am Jur, Electricity § 12.
[14] 28 Am Jur, Injunctions § 350.

3. SAME—PUBLIC INTEREST—SERVICE—RATES—STATUTES.

An electric public utility which is installed in the public streets is affected with a public interest, the owner surrenders the right to serve whom and where it wills, or to charge as it wills and becomes subject to the laws regulating public service corporations.

4. SAME—DUPLICATION OF CITY- AND PRIVATELY-OWNED DISTRIBUTION SYSTEMS—STATUTES—FRANCHISES.

An electric power company which had been granted a franchise to operate its utility upon certain streets within the city in which another electric company also served without restriction as to area and to which latter company plaintiff city succeeded by purchase of plant and assets, was not confined to area to which franchise applied notwithstanding abrogation of statute granting such private company the right to construct and maintain lines of poles and wires for use in transmitting and distribution of electricity on city streets by new State Constitution requiring consent of city to use of its streets by public utility operators and reserving to a city the right to the reasonable control of its streets and notwithstanding extensions of service by defendant utility duplicate city-owned system to some extent (Const 1908, art 8, § 28; PA 1905, No 264).

5. SAME—ACCEPTANCE OF STATUTORY GRANT OF FRANCHISE.

A written or formal acceptance of a statutory grant of a franchise to operate an electric public utility upon a city street is not essential to its validity (PA 1905, No 264).

6. SAME—STATUTES—EXTENSION OF DISTRIBUTION SYSTEM.

The actual user of municipal streets pursuant to grant of franchise to electric power companies by State statute does not measure the range of the acceptance of the grant as the operator of a utility is entitled to extend its distribution service upon need subject to conditions set forth at the time the grant was made, where there has been a continuous supply of its service (Const 1908, art 8, § 28; PA 1905, No 264).

7. SAME—DUTY TO SERVE—EXTENSION OF SYSTEM.

The duty of the operator of an electric public utility occupying the public streets to extend its distributing conduits so as to meet the reasonable requirements of the community and its right to serve, embracing the right granted to install the means of service are correlative.

8. SAME—PRIVILEGE TO OPERATE—DUTY TO SERVE.

It is well known that business enterprises, such as an electric

public utility, are based upon calculations of future growth and expansion, hence, where such a utility has a franchise to operate within a city, it not only has a privilege so to operate but an obligation to serve in a reasonable way.

9. SAME—RIGHT TO EXTEND SYSTEM—FRANCHISES—STATUTES.
   Defendant electric public utility which had a municipal franchise to serve in certain streets of city, whose predecessor had acquired an extension of the municipal franchise and operated while statute was effective giving such utilities the right to construct, maintain and operate on the streets of cities, villages and townships and had a county-wide franchise, could reasonably be expected to extend its service within the corporate limits of plaintiff city and possibly beyond such limits if the situation so demands (Const 1908, art 8, § 28; PA 1905, No 264).

10. APPEAL AND ERROR—CROSS APPEAL—QUESTIONS REVIEWABLE.
    The Supreme Court may choose to adjudicate an issue in an equity case that is raised by the appellee in its brief without having taken a cross appeal.

11. FRANCHISES—WITHOUT TERM—RENEWAL OF CORPORATE TERM.
    The life of a municipal franchise which has been granted without term limit to a public utility corporation is extended when the corporation renews or extends its charter term pursuant to statute.

12. SAME—VESTED RIGHT—IMPAIRMENT OF CONTRACTS—USE OF STREETS.
    A State franchise to a public utility corporation permitting it to use public streets in cities, villages and townships, which has been accepted by the corporation, constitutes a vested contractual right which is assignable and which could not be impaired by abrogation of the statute conferring it by a subsequently adopted State Constitution (Const 1908, art 8, § 28; PA 1905; No 264).

13. ELECTRICITY—FRANCHISE WITHOUT TERM—REASONABLE CONTROL OF STREETS BY MUNICIPALITY.
    Defendant electric public utility corporation has the right to use the streets and alleys of plaintiff city which has acquired its own electric plant and distribution system during the possible corporate life of defendant's predecessor, including any extensions thereof, without a new municipal franchise, where the predecessor had been granted a municipal franchise to operate in certain streets and subsequently a State statute had granted the predecessor the right to the use of public

streets in cities, villages and townships, such rights being sub-
ject to provision of subsequently adopted State Constitution
that municipalities have. the reasonable control of their streets
(Const 1908, art 8; § 28; PA 1905, No 264).

14. COSTS—PUBLIC QUESTION—INJUNCTION—MUNICIPAL CORPORA-
TIONS—PUBLIC UTILITIES.
  No costs are allowed in suit by city owning an electric plant and
  distribution system to enjoin a privately-owned public util-
  ity from extending its lines beyond the area in which it had
  previously rendered service, a public question being involved.

Appeal from Grand Traverse; Campbell (Howard L.), J., presiding. Submitted April 7, 1954. (Docket No. 27, Calendar No. 46,076.) Decided June 7, 1954.

Bill by the City of Traverse City, a municipal corporation, against Consumers Power Company, a Maine corporation, to enjoin the extension of power distribution facilities within city limits. Decree for plaintiff. Defendant appeals. Reversed and decree ordered entered.

*Charles H. Menmuir* and *Ormond S. Danford,* for plaintiff.

*Murchie, Calcutt & Griffin,* and *McKone, Badgley, Kendall & Domke* (*W. R. Roberts* and *Fitch R. Williams,* of counsel), for defendant.

BUSHNELL, J. Plaintiff city of Traverse City, a municipal corporation, on May 24, 1952, filed a bill of complaint seeking injunctive relief against defendant Consumers Power Company, a Maine corporation. The city also sought a declaration of rights regarding the franchise it had granted to defendant's predecessor, the Boardman River Electric Light & Power Company, with respect to the nature and extent of the rights or privileges of Consumers to extend its power facilities within the corporate limits of Traverse City.

A decree was requested holding that the rights, et cetera, previously conferred by ordinance or by virtue of PA 1905, No 264, (CL 1915, § 4841) "have ceased and do not confer upon defendant the right to carry or extend its lines into new areas in Traverse City, not accepted by it or used by it or its predecessors prior to April 29, 1952." The trial court was asked to declare that Consumers' claimed State franchise ceased November 3, 1923, and that the franchise granted it by the city expired December 21, 1938, and that it now has no franchise.

The case was submitted on stipulated facts which we summarize as follows:

The city has operated a light and power plant and distribution system since 1912. Consumers was organized April 13, 1910, and was admitted to do business in Michigan in 1915. It and its predecessor companies have conducted an electric light and power business in Traverse City continuously since 1894. Consumers began its operations there in September, 1950.

Plaintiff's predecessor, the village of Traverse City, by ordinance on May 7, 1894, granted defendant's predecessor, Boardman River Electric Light & Power Company, a 30-year franchise to erect and maintain on certain portions of named streets and alleys of the village, poles, wires and equipment for the distribution of electricity.

Boardman operated its business in the village and later in the city continuously from 1894 to 1925. During its period of operation the Boardman franchise was amended by adding thereto the right to use certain additional streets. In 1925 Boardman conveyed its rights to the Northern Michigan Public Service Company, a Michigan corporation, which in 1928 made a like assignment to Michigan Public Service Company, a Michigan corporation, which in turn conveyed its rights in 1950 to Consumers.

In 1906 the city of Traverse City, by ordinance, granted a franchise to Queen City Light & Power Company to operate a light and power utility and to use the streets and alleys of the city without limitation or restriction as to area to be served. Plaintiff city in 1912 purchased the plant, assets, rights and franchise of Queen City and has since that time continuously operated a light and power business. The city utility maintains a steam generating plant within the corporate limits and has 2 hydroelectric generating plants on the Boardman river, furnishing light and power for street lighting and private purposes.

Consumers does not have a generating plant within the city, but maintains distribution and transmission lines in certain areas, with substation facilities within the city. Its lines originate at hydroelectric generating plants, originally constructed by Boardman and located on the Boardman river in the adjacent township of Garfield, Grand Traverse county. Its transmission lines are connected to its state-wide integrated system of transmission lines, generating plants and substations.

On January 28, 1952, the city advised Consumers that the distribution line it had staked out running south on Rose street and east on Center street was apparently for the purpose of extending distribution to an area not theretofore served by Consumers or its predecessors, and that the use of such streets was not included in the original franchise. It was stated that this proposed extension "would not be in the best interest of the city, inasmuch as the city is already serving this territory and there is no need for duplication of distribution lines in this area." Consumers was further advised that it should limit its activities to the area included within its franchise and that as to any contemplated extension, application should be made therefor to the city. To this

Consumers promptly replied that it possessed a State grant and legislative franchise under the provisions of PA 1905, No 264, and that, as the successor of the original grantee, it is authorized to construct and maintain its lines in the public streets and alleys of the city and that it was hoped that the city manager and members of the city commission would agree to such right.

After a conference between representatives of Consumers and the city, together with the attorneys of the parties, which was held on March 13, 1952, the city denied that Consumers had acquired any vested rights under PA 1905, No 264. On April 29, 1952, Consumers, in order to serve a new supermarket, constructed a transmission line in an area not covered by the franchise issued to Boardman in 1894, which construction resulted in the present suit in equity.

The result of the operation of Consumers and the municipal electric utility has resulted in a partial duplication of lines and facilities.

The trial court proceeded to hear the matter on various dates. In addition to the stipulated facts, testimony of witnesses was taken and necessary exhibits were received. The proceedings concluded on December 29, 1952. The trial court filed a written opinion on April 29, 1953. The decree entered on June 5, 1953, is as follows:

"That Boardman River Electric Light & Power Company, a predecessor of defendant, and under which defendant claims, did not, in spirit nor in fact, accept the right or privilege tendered to it by PA 1905, No 264, and that Boardman River Electric Light & Power Company, on December 21, 1908, during the period of time that PA 1905, No 264, was in existence, did apply to the city of Traverse City for an extension of its limited franchise in the city and received a 30-year extension thereof.

"That defendant has no right under P.A. 1905, No 264, to carry or extend its lines on the highways, streets, alleys, or other public places in new areas in Traverse City, which had not been accepted by, or used by it, or its predecessors, prior to April 29, 1952, nor has defendant any right to extend its lines on highways, streets, alleys, or other public places in new areas in the city of Traverse City, or service such new areas in said city, which were not used or served by Boardman River Electric Light & Power Company, prior to the effective date of the Constitution of the State of Michigan of 1908 (January 1, 1909), nor has defendant any right, title, interest, privilege, easements. or franchises entitling it to erect in the future, poles, lines and distribution wires and systems upon the highways, streets, alleys and other public places in the city of Traverse City where it had prior to April 29, 1952, no lines, poles or distribution service, without the consent of the city of Traverse City or its electors.

"That defendant shall remove the lines, poles and wires placed by it on and after April 29, 1952, on Rose street, Carver street, Fern street and Center street in Traverse City, Michigan.

"That defendant is permanently enjoined from erecting poles and wires in the highways, streets, alleys and other public places in the city of Traverse City where prior to April 29, 1952, it had no lines, poles or distribution system, unless it secures the consent of the municipal authorities of the city of Traverse City or its electors."

On appeal, Consumers argues:

(1) That Boardman acquired a State franchise to operate an electric utility business in Traverse City, under P.A. 1905, No 264.

(2) It does not claim that the Boardman franchise is on a state-wide basis, but does claim that Consumers'· rights thereunder are not frozen as of January, 1909, to such streets only as were then occupied;

(3) That the question of the duration of the State franchise is not an issue which the city can raise on this appeal, but, if an issue, Consumers does not claim the State franchise is perpetual, but does claim that those rights duly assigned to and vested in it are presently in existence;

(4) That there was no abandonment of the State franchise in whole or in part;

(5) That Boardman did not disclaim the benefit of the general law of 1905, and "elect" to rely exclusively upon the local franchise which it secured in 1894 and which was extended in 1908;

(6) That there was no break in Boardman's corporate existence in 1923; and

(7) That the city is guilty of laches and estoppel.

In addition to these questions the city propounds the one of whether Consumers is subject to that portion of article 8, § 28 of the Constitution (1908), which prohibits a public utility from transacting "a local business therein without first obtaining a franchise therefor."

The applicable provisions of PA 1905, No 264 (CL 1915, § 4841), are as follows:

"Any person, firm or corporation authorized by the laws of this State to conduct the business of producing and supplying electricity for purposes of lighting, heating and power, and which shall be engaged or which shall hereafter desire to engage in the business of the transmission of such electricity, shall have the right to construct and maintain lines of poles and wires for use in the transmission and distribution of electricity on, along or across any public streets, alleys and highways and over, under or across any of the waters of this State, and to construct and maintain in any such public streets, alleys or highways all such erections and appliances as shall be necessary to transform, convert and apply such electricity to the purposes of lighting, heating and power, and to distribute and deliver the

same to the persons, firms and public or private corporations using the same:  *Provided,* That the same shall not injuriously interfere with other public uses of such streets, alleys or highways, or with the navigation of said waters, and that the designation and location of all lines of poles and wires shall be subject to the regulation, direction and approval of the common council of cities, the village council of villages, and the township board of townships, as the case may be:  *Provided,* That this act shall not apply to the county of Wayne:  *Provided further,* That nothing herein shall deprive cities, villages or townships of the power and control over their streets and highways, which they have by the general laws of this State."

This act was abrogated by article 8, § 28, of the Constitution (1908), which reads:

"No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township.   The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships."

The trial court in its opinion said and in its decree held that appellant's predecessor, the Boardman River Electric Light & Power Company "never accepted the right or privilege tendered by PA 1905, No 264, in spirit nor in fact," on the ground "that Boardman River Electric Light & Power Company, on December 21, 1908, during the period that PA 1905, No 264 was in existence, did apply to the city of Traverse City for an extension of its limited fran-

chise in the city and received a 30-year extension thereof."

In *City of Lansing* v. *Michigan Power Co.*, 183 Mich 400, it was said:

"A power company exercising a municipal franchise in the streets of a city, when PA 1905, No 264 (How Stat [2d ed], § 2941), went into effect, granting to persons and corporations who were engaged in the business of producing electricity for power and lighting purposes authority to construct and maintain lines of wires and poles in the public streets and highways of townships and cities of the State, was entitled to claim the right conferred by statute although it also claimed the privileges granted by the municipal ordinance and franchise: it was not necessary for it to disclaim authority under the franchise from the city in order to entitle it to exercise the power conferred by the statute, which conferred the right on all corporations of the class to which defendant belonged. The purpose of the 2 enactments was consistent." (Syllabus.)

At pages 410 and 411 of the *Lansing Case*, in quoting from the trial court's opinion, the question of what constitutes acceptance was summarized as follows:

" 'The act of 1905 tendered a franchise to defendant; such franchise was accepted by defendant by way of installing its service equipment in the public streets and providing a service of a public utility.' "

In *Village of Constantine* v. *Michigan Gas & Electric Co.*, 296 Mich 719, 727, the following language in the *Lansing Case* was quoted with approval in response to the argument that an election or disclaimer was necessary by defendant to determine under which franchise it was operating:

" 'The act of 1905 granted to defendant, as well as to others, the right to use the streets for the purposes

of promoting and making possible public utility service, and, when defendant made use of such grant, it was not necessary for it to disclaim user under the franchise from the city, for the franchise and the act of 1905 were not at all inconsistent in purpose and scope.' *City of Lansing* v. *Michigan Power Co., supra,* at page 405."

We do not agree with the trial court's holding that the operation of Boardman, under an extended franchise from the city of Traverse City, granted in 1908, while PA 1905, No 264, was in effect, constituted an election to occupy streets of Traverse City under the city franchise. *Michigan Public Service Co.* v. *City of Cheboygan,* 324 Mich 309, is controlling on this point. It was there claimed that the corporate plaintiff's predecessor was not using the streets and alleys of the city of Cheboygan by virtue of PA 1905, No 264, but was exercising that right by a city franchise granted to it in 1904, and that, by accepting a new franchise in 1913, it had elected to operate exclusively under the city franchise. In reversing the trial court's ruling in this regard the court said at page 322:

"In that, the court was in error. At no time was the company required to *elect* as to whether it was occupying the city streets and alleys in pursuance of PA 1905, No 264, or in pursuance of a municipal franchise."

These holdings are authority for the proposition that Consumers, through its predecessors, acquired a State franchise.

What, then, is the extent of the right acquired under that franchise? Although not answered specifically by the trial judge, the decree entered below restrained defendant from carrying or extending its lines into new areas within Traverse City which had not been accepted or used by it or its predecessors

prior to April 29, 1952. The effect of such a holding, freezing the rights acquired under the State franchise to the existing user as of 1909, the effective date of the constitutional provision which abrogated the act of 1905, is incongruous and detrimental to the public interest. Defendant, being a public utility, is under a duty to extend electrical service to the public within the area serviced upon reasonable demand. To hold now that they are restricted from rendering electrical service to an area not previously served within the corporate limits of a growing municipality would thwart the very nature and object of a public utility.

" 'In granting the use of the streets for public utility purposes, the legislature recognized the public purpose to be subserved through such use. The legislature tendered the use of the streets for public utility purposes to such individuals and corporations as would provide the public with a necessary utility service, knowing that the creation of such a utility and its service would entail the expenditure of large sums of money and benefit the public by providing a common service of the utility, knowing also that as soon as it should be installed in the public streets it would become affected with a public interest, and that its owner would have to surrender the right to serve whom and where it willed, or to charge as it willed, and that it would become subject to the laws regulating public service corporations.' " *City of Lansing* v. *Michigan Power Co., supra,* 410.

The *Lansing Case* involved an analogous factual situation to the one at bar. There the plaintiff city also had a municipal electric plant operating in competition with defendant Michigan Power Company's facilities. Both made use of the public streets for the transmission of electricity; and there the claim was also made that Michigan's only right to use and maintain such facilities upon the streets arose out

of a municipal franchise which had expired. Michigan claimed, as does Consumers here, a State franchise under PA 1905, No 264. This Court unanimously affirmed the lower court's decision denying plaintiff city injunctive relief and refused to compel the defendant to remove its power equipment from the public streets.

*Russell* v. *Sebastian,* 233 US 195 (34 S Ct 517, 58 L ed 912), involved a review of a judgment in a habeas corpus proceeding. Plaintiff was arrested upon a charge of excavating in a street of Los Angeles, California, in violation of a city ordinance. Plaintiff was acting on behalf of a gas company supplying the city with gas and was engaged in excavating preparatory to laying pipes in a street which it had not previously used. A claim of right so to proceed was made by plaintiff, based upon the State Constitution, as amended in 1884, which granted the general use of the public streets in supplying the inhabitants of a city with gaslight or other illuminating light. Subsequently (1911), the California Constitution was amended. Pursuant to this amendment the city of Los Angeles adopted an ordinance prohibiting the exercise of any franchise or privilege to lay or maintain pipes or conduits in the streets, without having first obtained a grant from the city.

In the language of Mr. Justice Hughes, the problem presented in the *Russell Case* was said to be that (p 205):

"The controversy in the present case relates to the extent to which the grant had become effective through acceptance. It is not contended that the change in the constitution could disturb the company's rights in the streets used previous to the amendment; but it is insisted that such actual user measured the range of the acceptance of the grant, and hence defined the limits of its operation."

In the *Russell Case* there was no written or formal acceptance of the offer under the Constitution of California. Here, there is also no written or formal acceptance of the statutory provisions of PA 1905, No 264. It was held in the *Russell Case* that formal acceptance was not required. A like decision on this point was made in the *Lansing Case*. The *Russell Case* was cited with approval in the *Lansing Case* in construing Act No 264; and it was further noted that the Michigan act, like the California constitutional provision, gave the right to "any individual or any company duly incorporated for such purpose, under and by authority of the laws of this State." *City of Lansing* v. *Michigan Power Co., supra,* p 417.

In reversing the Supreme Court of California, which had refused plaintiff's writ of habeas corpus, the Supreme Court of the United States in the *Russell Case* held (p 210):

"that the company was entitled to extend its mains for the purpose of distributing its supply to the inhabitants of the city subject to the conditions set forth in the constitutional provision as it stood before the amendment."

The reasoning in the *Russell Case* is particularly applicable to the case at bar, and, although lengthy, merits quotation (pp 208–210):

"In view of the nature of the undertaking in contemplation, and of the terms of the offer, we find no ground for the conclusion that each act of laying pipe was to constitute an acceptance *pro tanto*. We think that the offer was intended to be accepted in its entirety as made, and that acceptance lay in conduct committing the person accepting to the described service. The offer was made to the individual or corporation undertaking to serve the municipality, and when that service was entered upon and the individual or corporation had changed its position beyond recall, we cannot doubt that the offer was ac-

cepted. *City R. Co. v. Citizens Street R. Co.,* 166 US 557, 568 (17 S Ct 653, 41 L ed 1114, 1118); *Grand Trunk Western R. Co. v. South Bend,* 227 US 544 (33 S Ct 303, 57 L ed 633, 44 LRA NS 405). In this view, the grant embraced the right to lay the extensions that were needed in furnishing the supply within the city.

"This construction of the constitutional provision is the only one that is compatible with the existence of the duty which it was intended, as it seems to us, that the recipient of the State's grant should assume. The service, as has been said, was a community service. Incident to the undertaking in response to the State's offer was the obligation to provide facilities that were reasonably adequate. *Lumbard v. Stearns,* 4 Cush (58 Mass) 60; *Cumberland Telephone & Telegraph Co. v. Kelly,* 87 CCA 268 (160 F 316, 324, 15 Ann Cas 1210); *Atlantic Coast Line R. Co. v. North Carolina Corp. Commission,* 206 US 1, 27 (27 S Ct 585, 51 L ed 933, 945, 11 Ann Cas 398); *People, ex rel. Woodhaven Gaslight Co., v. Deehan,* 153 NY 528, 533 (47 NE 787); 2 Morawetz, Private Corporations (2d ed), § 1129. It would not be said that either a water company or a gas company, establishing its service under the constitutional grant, could stop its mains at its pleasure and withhold its supply by refusing to extend its distributing conduits so as to meet the reasonable requirements of the community. But this duty and the right to serve, embracing the right under the granted privilege to install the means of service, were correlative.

"In *People, ex rel. Woodhaven Gaslight Co.,* v. *Deehan, supra* (approved in *Illinois C. R. Co. v. Chicago,* 176 US 646, 666 [20 S Ct 509, 44 L ed 622, 629]), a grant of authority to lay conduits for conveying gas through the streets of a town, so as to render service to the people of the town, was held to extend as a property right not only to the streets then existing, but to those subsequently opened. The court said (p 533): 'It is well known that business enterprises

such as the relator is engaged in are based upon calculations of future growth and expansion. A franchise for supplying gas not only confers a privilege, but imposes an obligation, upon the corporation to serve the public in a reasonable way. The relator is bound to supply gas to the people of the town upon certain conditions and under certain circumstances, and it would be most unjust to give such a construction to the consent as to disable it from performing its obligation. It cannot reasonably be contended that the relator is obliged to apply for a new grant whenever a new street is opened or an old one extended, as would be the case if the consent applied only to the situation existing when made. When the right to use the streets has been once granted in general terms to a corporation engaged in supplying gas for public and private use, such grant necessarily contemplates that new streets are to be opened and old ones extended from time to time, and so the privilege may be exercised in the new streets as well as in the old.' "

The important factor of reasonableness must be read into Act No 264, thereby limiting the scope thereof to the corporate limits of plaintiff city, with the possibility of extension beyond the municipal limits if the situation so demands. It should be kept in mind, however, that Boardman (defendant's predecessor) by its articles of incorporation was authorized to do business in the county of Grand Traverse. This, however, does not necessarily require or demand that we are called upon to decide here that Consumers should be held to have a county-wide franchise. Nor do its articles of incorporation, unless by judicial interpretation, become the factor in determining the extent of the franchise received under Act No 264.

Appellee city further contends that, if Boardman River Electric Light & Power Company, defendant's predecessor, acquired a State franchise, that fran-

chise is limited as to time. Plaintiff has not taken a cross appeal from the decree entered below, but now raises this point for adjudication. Notwithstanding the rule as to such request (*Township of Pontiac* v. *Featherstone,* 319 Mich 382), we choose to answer the question rather than have it remain open for further litigation.

It is argued by plaintiff that the defendant company cannot have a "perpetual" State franchise. Conversely, the defendant denies that it has ever asserted such a claim. Had the import of the question been less, we would decline to answer, it thus being moot.

This question was previously raised in *City of Benton Harbor* v. *Michigan Fuel & Light Co.,* 250 Mich 614 (71 ALR 114). Plaintiff, to sustain its position that the Boardman company could not acquire a State franchise beyond its initial 30-year term, cites, among others, the cases of *Wyandotte Electric-Light Company* v. *City of Wyandotte,* 124 Mich 43; *Rockwith* v. *State Road Bridge Co.,* 145 Mich 455; and *Northern Michigan Water Co.* v. *Escanaba,* 199 Mich 286. These same authorities were presented in the *Benton Harbor Case* and held inapplicable. The Court there, in affirming a dismissal of plaintiff's bill to restrain the defendant corporation from occupying and using the city's streets in its business as a gas company, examined and distinguished the cited cases. It was said at page 622 of the *Benton Harbor Case*:

"It has been held by high authority that, when a corporation renews or extends its charter term under provisions similar to those in our statute, it thereby extends the life of a municipal franchise granted without term limit to such corporation."

In the *Village of Constantine Case* it was urged that the *Benton Harbor Case* was inapplicable in

that it involved a municipal franchise, whereas at issue then was a State franchise. This contention was denied, the Court saying, at page 732 of the *Constantine Case:*

"This question is settled by the *City of Lansing Case* where we held that a State franchise was a contract which could not be impaired by abrogation of PA 1905, No 264, by the Constitution of 1908. We, therefore, conclude that the corporate term of the Constantine Hydraulic Company, to which the State franchise was granted, was not fixed or limited as it possessed the power of renewing and extending its term of corporate existence."

See, also, *Michigan Public Service Company* v. *City of Cheboygan, supra,* at p 325.

To summarize: This Court has held that rights acquired under the 1905 act are vested rights, contractual in nature, and assignable. *Village of Constantine* v. *Michigan Gas & Electric Co., supra.* The situation presented here comes within the rule of the *Lansing, Constantine* and *Cheboygan Cases.* Appellant corporation has the right to use the streets and alleys of the city during the continuation of the "possible" corporate life of its predecessor (*Constantine Case, supra*), "including any extensions thereof." (*Cheboygan Case, supra.*) It should be noted that, even though no new municipal franchise is required, these rights are subject, however, to the reasonable municipal regulations as are reserved in the 1908 Constitution (art 8, § 28), namely the "reasonable control of their streets, alleys and public places." See, also, the similar reservation in Act No 264, *supra.*

In view of the foregoing, the other questions raised do not require discussion.

The decree of the circuit court is vacated. A decree may be entered in this Court in accordance with.

:this opinion. No costs will be allowed, a public :question being involved.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.