**SOUTHERN BELL TELEPHONE & TELEGRAPH CO., Plaintiff,**

v.

**CITY OF MERIDIAN, Defendant.**

Civ. A. 812.

United States District Court
S. D. Mississippi, E. D.
Sept. 5, 1957.

Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss.; Floyd, Cameron & Deen, Meridian, Miss.; John A. Boykin, Jr., Rexford L. Hawkins, Atlanta, Ga., for plaintiff.

Ethridge, Minniece & Bordeaux, and Lester E. Wills, Meridian, Miss., for defendant.

MIZE, District Judge.

This is an action for declaratory judgment brought by the Southern Bell Telephone & Telegraph Company against the City of Meridian, Mississippi. The principle question for solution is whether or not an irrevocable franchise was granted to the predecessors of Southern Bell Telephone & Telegraph Company by an act of the legislature of the State of Mississippi in 1886, and whether or not the telephone company accepted that grant so as to constitute a contract protected by the Federal Constitution, art. 1, § 10.

The question stems and arises by virtue of the passage of an act of the Legislature of Mississippi in 1956, under which statute the City of Meridian contends it is authorized to charge the telephone company two per cent of the company's monthly service charges as compensation for use of the streets, alleys and public places situated in the City.

The plaintiff contends that it holds a perpetual and irrevocable grant from the State of Mississippi to the use and occupancy of all the highways, streets and roads in Mississippi, including municipal streets, without paying compensation therefor, and that this right was granted to the company and its predecessors by the act of the Legislature of 1886. The plaintiff further contends that the act of 1956, c. 372, § 5(e) thereof, does not authorize the charge claimed by the City.

The City contends that no perpetual grant was given by the act of 1886, but

that it was only a license and subject to be extinguished by an act of the legislature at any time it desired. It further contends that even if the law of 1886 was an irrevocable grant, then the defendant has rescinded and abandoned the grant by the action of the plaintiff's predecessors in title by entering into new contracts with the defendant and other municipalities in the State of Mississippi inconsistent with the alleged agreement made under the Laws of 1886; and further by the acceptance of benefits and advantages under the Mississippi Constitution of 1890 by the plaintiff and its predecessors in title and thereby agreeing by virtue of Section 179 of the Mississippi Constitution of 1890 to the relinquishment of all contractual rights held by the plaintiff and its predecessors in title contrary to the said constitution of 1890. It further contends that plaintiff's predecessors in title had abandoned all rights acquired under the act of 1886 and that as a matter of fact the City had reacquired all of the alleged rights by prescription or adverse possession and that the plaintiff had lost the alleged rights by reason of estoppel and laches.

Briefly, those are the contentions of the respective parties.

In determining the intent of the legislature by its act of 1886 it is necessary to consider the act as of the time when it was passed. Prior to 1886 the State of Mississippi had conferred upon telegraph companies the right to erect their posts and fixtures upon the highways and streets of the State, but telephone companies by the prior acts were not mentioned. See Sections 1065, 1066 and 1067 of the Miss.Code of 1880. In 1886 the legislature adopted Chapter 38, granting to telegraph and telephone companies the right to use the streets and highways for the purpose of broadening the communications system, and by the title of the act it is shown it was passed for the purpose of encouraging and facilitating the construction of telephone and other like lines in the State. The pertinent part of the act is as follows:

"An Act to encourage and facilitate the construction of Telegraph, Telephone and other like lines in the State of Mississippi.

"Section 1. Be it enacted by the Legislature of the State of Mississippi, that any telegraph or telephone company, chartered or incorporated by the laws of this or any other State of the United States, shall, upon making due compensation, as hereinafter provided, have the right to construct, maintain and operate telegraph or telephone lines through any public lands of this State, and on, across and along all highways, streets and roads, and across and under any navigable waters, and on, along upon the right of way and structures of any railroad, and, in case of necessity, on, under, or over any private lands in this State; provided, that the posts, arms, insulators and other fixtures of such telegraph or telephone lines be so erected, placed and maintained as not to obstruct or interfere with the ordinary use of such highways, railroads, streets or water, or with the convenience of any land owner, more than may be unavoidable."

The pertinent parts of Chapter 372, Laws of 1956, are as follows:

"In addition to such other rights as it may have to use the streets, alleys and public places of a municipality, a public utility which holds a certificate of public convenience and necessity granted under the provisions of this act covering the geographical area of such municipality, and which (1) is operating under a municipal franchise on the effective date of this act, or (2) shall have previously operated under such a municipal franchise which has expired within five (5) years prior to the effective date of this act, or (3) which shall hereafter operate under a municipal franchise hereafter granted, may, after the expiration of any such franchise continue to use

the streets, alleys and public places therein situated upon condition that (1) such utility shall pay the said municipality compensation therefor at the rate of two per cent (2%) of said utility's gross revenues from sales to residential and commercial customers within said municipality, in case of a utility defined in section 1 D (1) and 1 D (2) and in the case of a utility defined in 1 D (3) the said utility shall pay two per cent (2%) of the monthly service charges in said municipality whether said utility has a franchise to operate therein or not, such payments to be made quarterly of each year after the effective date of this act, and (2) that after the expiration of such franchise the municipality, or any customer of such utility in such municipality, upon appropriate petition, shall be entitled to a hearing as to whether or not the certificate of convenience and necessity may then and thereafter be granted on a permanent basis as herein set out. Any co-operative which shall operate within any area of a municipality shall likewise pay such municipality two per cent (2%) of the co-operative's gross revenue from sales to residential and commercial customers within said municipality. Any municipality shall have the right to acquire by purchase, negotiation or condemnation the facilities of any utility that is now or may hereafter be located within the corporate limits of such municipality."

Another pertinent part of the Laws of 1956, being Section 39 of Chapter 372, is as follows:

"Repeal of conflicting acts.—Any acts, or parts of acts, in conflict with the provisions of this act are hereby repealed, but neither the repeal of any such acts nor the passage of this act shall affect any act done, or any cause of action, whether in litigation or otherwise, or any rights accruing, accrued or established prior to the effective date of this act."

There is no controversy about the facts in this case. All the facts are stipulated or shown by documentary evidence in the record from which inferences may be drawn. Prior to 1850 the telegraph came into public use and shortly thereafter the Legislature of Mississippi enacted a statute authorizing telegraph companies to construct their lines and to set up and erect poles and fixtures along the public highways and streets of the State of Mississippi, as well as through public lands belonging to the State. See Miss.Code 1857, p. 300. Following the invention of the telephone in 1876 several companies entered Mississippi and began the operation of a telephone business. Prior to August 4, 1883, the Louisiana Telephone Company maintained telephone exchanges and used the streets, alleys and public places in certain municipalities, including the City of Meridian. On August 4, 1883, the Louisiana Telephone Company conveyed to the Great Southern Telephone and Telegraph Company all of its properties and rights. Subsequent to this purchase and during each year subsequent to the enactment of Chapter 38 of the Mississippi Laws of 1886, and up until the year 1898, when it was consolidated with the Cumberland Telephone and Telegraph Company, the Great Southern Telephone and Telegraph Company operated under this statute and used the streets and roads in the State to promote its business. The Cumberland Telephone and Telegraph Company had started to do business in Mississippi prior to the year 1886, and after the passage of the Laws of 1886 and during the subsequent years until 1926, the Cumberland Telephone and Telegraph Company continued to expand its business and to use the highways and streets in the State. On June 30, 1926, the Southern Bell Telephone and Telegraph Company purchased the Cumberland Telephone and Telegraph Company and succeeded to all the rights and property of the Cumberland Tele-

phone and Telegraph Company of every kind. Since the acquisition by the Southern Bell Telephone and Telegraph Company it has continued to expand its business and to use the streets and highways in the State of Mississippi, and it therefore appears that the plaintiff and its predecessors in title have continuously used the roads and public streets in the State of Mississippi from 1884 up until the present time and up until the time of passage on March 29, 1956 of the act of the legislature under which the City of Meridian now contends it is entitled to charge the two per cent of plaintiff's monthly service charges.

As hereinbefore stated, some of the telephone companies had begun to do business in the State and the City of Meridian was one wherein it was doing business, and the City of Meridian had given the telephone companies the right to use the highways and streets free of charge, as had also the cities of Jackson and Vicksburg; but the City of Jackson had granted such right upon the consideration that the telephone company would furnish them one telephone free of charge. Since that time the City of Meridian has granted franchises to the telephone companies and the telephone companies have furnished a small number of telephones to the City free of any charge whatsoever.

One of the early decisions of the Supreme Court of Mississippi applicable to the issues in this case is that of Hodges v. Western Union Telegraph Company, 72 Miss. 910, 18 So. 84, 29 L.R.A. 770. In that case the City had passed an ordinance requiring all the telegraph companies doing business in the city to pay as rent for the use of the streets $2.50 per year for each telegraph pole erected on any of the streets. The company declined to pay the rent and suit was filed to collect the rental charge. The Supreme Court of Mississippi held that under the act of 1886 the Western Union had the right to occupy the streets of the city without compensation and that all the power which the city had

over its streets was derived from the legislature, whose power over the streets of the city was supreme and transcendent, and that the Act of 1886 required no compensation to be paid by the company for the use of the streets. The court further held in that case that the legislature, not having authorized the City of Meridian to exact a rental charge, that its effort so to do was beyond its power. It further held that the act was a license to the company to use the streets, but was revocable at the will of the legislature.

The question now arises whether or not the plaintiff in this case and its predecessors in title had accepted the privileges granted by the Laws of 1886 so as to constitute a contract between the State and the companies that is protected by the federal and state constitutions. The authorities are unanimous that it is a binding contract and to change its terms would be to impair the obligations of a contract and conflict with the U. S. Constitution. Certainly if the act had been repealed before it was accepted by any company, then no company coming into the State subsequent to the repeal could claim its benefits; but the plaintiff in this case, having accepted the benefits and relied upon its provisions and expanded its services, indicated a clear intent to accept the offer, and as a result a binding contract became effective. This question has been before the Supreme Court of the United States, as well as many of the states, and all the courts hold that where there has been an offer and an acceptance by conduct, then a binding contract is created and the offer by the state to companies of benefits when accepted by any utility is irrevocable and is more than mere license to use the streets at the will of the legislature. Many authorities are cited by plaintiff upholding this doctrine and no one squarely in point is cited by opposing counsel, but counsel for the City do cite many authorities upon a different state of facts. I shall not undertake to cite all the applicable authorities but only those that are clearly decisive.

The Supreme Court of the United States in Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 520, 58 L.Ed. 912, held that under an act of California offering the use of the streets to a gas company and accepted by the gas company by the use thereof, created a contract and that to change its terms would be to impair the obligations of the contract. In that case there was a grant to utilities contained in the California Constitution of 1879, art. 11, § 19. The gas company entered the city in 1909 and laid its pipes in certain streets of the city. In 1911 the California constitution was amended and the city contended that the 1911 amendment to the state constitution took away the grant contained in the constitution of 1879. When the Gas company continued to use the streets and to expand into new streets the city undertook to adopt an ordinance prohibiting the laying of pipes without a grant from the city and unless the utility company bought and paid for a municipal franchise. The city in that case further contended that the grant of the state, if it had been a contract, should not extend to any streets other than those that were being occupied prior to 1911. The California Supreme Court upheld the contention of the city, but the Supreme Court of the United States rejected the city's contention and held that the offer of the state when accepted by the utility ripened into a contract which was protected under the constitution. In that case the court said: "That the grant, resulting from an acceptance of the state's offer, constituted a contract, and vested in the accepting individual or corporation a property right, protected by the Federal Constitution, is not open to dispute in view of the repeated discussions of this court."

The court further said:

"The controversy in the present case relates to the extent to which the grant had become effective through acceptance. It is not contended that the change in the Constitution could disturb the company's rights in the streets used previous to the amendment; but it is insisted that such actual user measured the range of the acceptance of the grant, and hence defined the limits of its operation * * *."

" * * * Such a grant would not be one of several distinct and separate franchises. When accepted and acted upon it would become binding—not foot by foot, as pipes were laid, but as an entirety, in accordance with its purpose and express language." See also Grand Trunk Western R. Co. v. City of South Bend, 227 U.S. 544, 33 S.Ct. 303, 57 L.Ed. 633; also a later California case, Pacific Telephone and Telegraph Company v. City of Los Angeles, 44 Cal.2d 272, 282 P.2d 36; City of Owensboro v. Cumberland Telephone and Telegraph Company, 230 U.S. 58, 33 S.Ct. 988, 990, 57 L.Ed. 1389, in which case the court said: "That an ordinance granting the right to place and maintain upon the streets of a city poles and wires of such a company is the granting of a property right has been too many times decided by this court to need more than a reference to some of the later cases * * *.

"The grant by ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the streets and alleys of a city with its poles and wires for the necessary conduct of a public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself, or as a consequence of some limitation imposed by the general law of the state, or by the corporate powers of the city making the grant." See also City of Louisville v. Cumberland Telephone & Telegraph Co., 224 U.S. 649, 32 S.Ct. 572, 56 L.Ed. 934.

In 1953 the Attorney General of the State of Mississippi was requested to give an opinion as to whether in granting a franchise to the Southern Bell Telephone & Telegraph Company a municipality may exact from the company as the consideration for the franchise the certain percentage of the company's gross income. The Attorney General's opinion shows that he gave an extensive investigation into the question and an-

742

swered that in view of the Laws of 1886 he was of the opinion that there was a contract created by the act of 1886 and the acceptance of the use of the streets by the telephone companies, and that, therefore, to exact compensation would be in violation of the Federal Constitution. This opinion, of course, is not binding upon the courts, but it is a persuasive authority. See also Southern Bell Telephone and Telegraph Company v. City of Mobile, 162 F. 523; 174 F. 1020 (Fifth Circuit Court of Appeals cases).

Under the stipulation and documents offered in evidence it is clear that the act of 1956 by the Mississippi State Legislature, if it undertakes to authorize a municipality to impose the charges, is beyond the power of the legislature and would conflict with the constitution of the United States.

The City contends, however, that even though there was created a contract that by the subsequent conduct of the plaintiff and its predecessors it has abandoned that contract and estopped itself to claim any rights under the contract by its subsequent conduct; that by entering into a new contract with the defendant and by taking advantage of laws passed under the Mississippi Constitution of 1890 it relinquished any rights that it had under the act of 1886, and that the City had extinguished the grant by prescription or adverse possession and that the plaintiff was guilty of such laches that it could not now take advantage of the act of 1886. One of the acts that the City relies upon is that on April 7, 1898, it appeared before the Mayor and Board of Aldermen of the City of Meridian and sought a franchise from the City to use the streets in the operation of its telephone business, and that in 1898 the City of Meridian filed a suit against the Cumberland Telephone Company in which it sought an injunction against the company to prevent it from using the streets without a franchise from the City. This case was removed to the Federal Court of the Southern District of Mississippi, but the

record has now been lost and the only thing shown is the judgment of the Federal Court wherein the lawsuit was dismissed at the cost of the City. After dismissal of the lawsuit in the Federal Court the attorney for the telephone company appeared before the Board of Aldermen on June 9, 1899, seeking a franchise for the said company in order that the company might establish their plant and do business in Meridian. Subsequently a franchise was granted and in granting that franchise the company agreed to furnish to the City free of charge some few telephones. Also relied upon by the City is the conduct of the company in taking advantage of a general law of the State by which telephone companies were given the right of eminent domain over private property. With reference to the franchises, the record shows that on May 6, 1884, the governing authorities of the City of Meridian authorized a predecessor of plaintiff to operate telephone lines in the City of Meridian and to use its streets and other public places for such service, and that by March 16, 1886, the date of the passage of the act, one of plaintiff's predecessors in title had established a telephone exchange in the City of Meridian and was operating forty-four telephones in the homes and offices in the City. And, likewise, prior to March 16, 1886, the Cumberland Company, another of plaintiff's predecessors, had commenced operations in the State of Mississippi, and that between March 16, 1886, and March 8, 1898, two of plaintiff's predecessors had secured franchises in seven cities in Mississippi and had accepted the franchises and had agreed to furnish free telephone service to the cities.

The fact that prior to 1886 franchises had been granted by the cities, and even though consideration might have been paid therefor, is immaterial for the reason that under the Hodges case, cited supra, the State Legislature had complete control over all of the streets and highways of the State, and, therefore. when the act of 1886 was passed it took

away from the cities the power to make any charge for the use of the streets by telephone companies. The company is not estopped by the act of its predecessors or either by entering into new franchises for the reason that there was already existing an irrevocable contract between the State and the plaintiff and its predecessors granting to the plaintiff the right to use the streets. This right could not be altered. The furnishing of a few telephones free of charge to the City would be insufficient on which to base a judgment that the telephone company, and its predecessors, had abandoned any such valuable right as it had under the grant. There is no inconsistency in operating under the grant that is given to it by the State and any grant that it might receive from the municipality. Traverse City v. Consumers Power Company, 340 Mich. 85, 64 N.W.2d 894; Northwestern Telephone Exchange Co. v. City of Minneapolis, 81 Minn. 140, 83 N.W. 527, 53 L.R.A. 175, and in the later opinion in 86 N.W. 69; City of Los Angeles v. Los Angeles City Water Company, 177 U.S. 558, 20 S.Ct. 736, 44 L.Ed. 886; City of Minneapolis v. Minneapolis Street Railway Co., 215 U.S. 417, 30 S.Ct. 118, 125, 54 L.Ed. 259, wherein the Supreme Court of the United States said, "Acquiescence in a regulation which may not have been deemed injurious, and may have been deemed wise and expedient, does not preclude a contest against the enforcement of regulations which are injurious and violative of contract rights."

 The contention that the plaintiff is estopped by accepting benefits under the constitution of Section 179 of 1890 cannot be upheld. When the constitution was adopted in 1890 the plaintiff had acquired vested rights and these vested rights could not be impaired by the State of Mississippi either by legislation or by the adoption of a constitution undertaking to do so. Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 58 L.Ed. 912, and other authorities hereinbefore cited. In 1890 plaintiff's predecessors were already doing business in the State and had acquired vested property rights that were irrevocable, and nothing but a clear intent to abandon those property rights or to relinquish them could deprive plaintiff or its predecessors of those rights. Plaintiff and its predecessors had a perfect right to take advantage of any general laws that were passed for the benefit of it or any other corporations engaged in business in the State, and the fact that it does do so cannot deprive it of a vested right. As a matter of fact, the history of Sections 178 and 179 as gleaned from the decisions of the Supreme Court of Mississippi indicate very clearly that Section 179 was not intended to apply to foreign corporations, but was applicable only to the corporation created under the laws of the State of Mississippi. It is clear, however, under the authorities that if it was intended to apply to foreign corporations, then it could not be applicable to the plaintiff and its predecessors because of their rights having become vested prior to 1890. An intent to relinquish a vested right must be very clear, and certainly there is nothing in this record that shows any intent on the part of the plaintiff or its predecessors to relinquish any right it had theretofore acquired. The doctrine of laches, estoppel or adverse possession is not applicable to the facts disclosed by the record in this case. The plaintiff nor any of its predecessors has been guilty of any conduct that would estop it from asserting the rights it now claims. It is guilty of no laches for the reason that the record shows clearly that from 1886 up until the present date it has continuously and uninterruptedly used the streets and highways of the State under the grant given by the act of 1886, and up until the passage of the act of the Legislature of 1956 its right to use the streets of the cities and the highways of the State has not been challenged successfully in any proceeding whatsoever.

I am of the opinion that the City is without power to impose the charge it

seeks to impose upon the plaintiff in this case and that a declaratory judgment should be entered denying the City of Meridian the right to impose the charge.

An order may be drawn accordingly.