451 So.2d 6 (1984)
CALLAIS CABLEVISION, INC.
v.
HOUMA CABLEVISION, INC., et al.
No. 83 CA 0220.
Court of Appeal of Louisiana, First Circuit.
March 5, 1984.
Rehearing Denied April 10, 1984.
Writ Denied June 8, 1984.
*7 Ashton R. Hardy, New Orleans, for plaintiff and appellant.
Christopher Siegrist, Sidney C. Sundbery, Houma, Edward J. Gay, III, New Orleans, for defendant and appellee.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
This suit is brought by Callais Cablevision Company (Callais) for injunctive relief against Houma Cablevision, Inc. (HCI), and relief declaratory of its rights vis-a-vis those of HCI to operate cable television systems in Terrebonne Parish. Callais presently is providing cable service to the residents of the unincorporated areas of Terrebonne Parish under a nonexclusive franchise granted it in 1978 by the Parish Police Jury, pursuant to the power granted in La.R.S. 33:4361. HCI is also providing service to customers in this same area, and it has been doing so since the 1960's. HCI, however, is not operating under a La.R.S. 33:4361 franchise. For that reason Callais seeks to have HCI's operation declared an unlawful infringement on Callais' franchise rights and permanently enjoined or, alternatively, restricted in scope.
The trial court found for HCI and dismissed Callais' suit, prompting this appeal.
HCI is the successor to a line of companies that have provided cable service in Terrebonne Parish since the early 1960's. The first of these companies, Mohana's Electrical Construction Company (Mohana) was granted a city franchise in 1962 to provide cable service in the City of Houma but not in the unincorporated areas of the Parish. Mohana later requested and received a "letter of no objection" from the Terrebonne Parish Police Jury in response to its request for permission to use the privately-owned utility poles of South Central Bell to install a "community antenna television system" (cable system) in the unincorporated portion of the Parish. HCI claims and the trial court found that the transfers of interest from Mohana to subsequent companies included this "permit" to operate a cable system in the Parish. Callais claims that the transfers were insufficient to convey the "permit" and that HCI is therefore unlawfully operating because it is without benefit of a permit or a franchise.
We find, however, that regardless of the status of the permit, HCI lawfully commenced its operations in 1966 pursuant to the State law then in effect. La.R.S. 45:781[1] provides that corporations "formed *8 for the purpose of transmitting intelligence" may construct lines necessary to do so "along all public roads or public works." This language was interpreted by the Third Circuit Court of Appeal in KAOK-CATV, Inc. v. Louisiana Cable TV, Inc., 195 So.2d 297 (La.App.3rd Cir.1967), to be broad enough to include a cable system company as one formed to "transmit intelligence," thus entitling the company to use the public ways for its lines. We agree that the broad language of La.R.S. 45:781 encompasses cable television companies.
KAOK-CATV further held that it was not necessary for the defendant cable system operator to obtain a franchise from the policy jury. It examined the powers granted police juries in La.R.S. 33:1236 (general powers) and La.R.S. 33:4361[2] (activities subject to police jury franchise) and found that no provision of our law required a cable company to obtain a franchise from a police jury in order to conduct its business. These two statutes have undergone extensive amendment since that time, however, particularly relating to cable television operations. We must now determine whether HCI is lawfully operating today in the face of these legislative amendments.
La.R.S. 33:1236 sets forth in detail the powers of a police jury. Being a political subdivision of the State, a police jury has only those powers that are conferred on it by the Constitution and laws of this State. La. Const. of 1974, art. VI, § 5(E) and 7(A); Rollins Environmental Services of Louisiana, Inc. v. Iberville Parish Police Jury, 371 So.2d 1127 (La.1979); KAOK-CATV, 195 So.2d at 298 (and authorities cited therein). We find no change in La.R.S. 33:1236 since KAOK-CATV which would allow a police jury to require cable television companies to get a franchise.
La.R.S. 33:4361[3] was amended by Louisiana Acts 1976, No. 573, § 1, to allow police *9 juries to "grant franchises over the public... roads ... of [the] parishes ... to any person for ... the construction, maintenance, and operation of ... lines and cables... for transmitting television signals...." Also in that act, La.R.S. 45:781 was amended to add subsection B providing that nothing in that statute shall "affect the right granted to parish governing authorities to grant franchises for the regulation of cable television outside municipalities." (Other changes, not material here, were also made.) However, no specific provision was made for companies such as HCI which were already operating cable systems but without franchises. It is therefore unclear just how the status of companies such as HCI was affected by these 1976 amendments. Callais urges that the 1976 amendments had the effect of imposing upon HCI the requirement of getting a Parish franchise in order to operate. It argues persuasively that under Gulf States Utilities Co. v. Dixie Electric Membership Corporation, 185 So.2d 313 (La. App. 1st Cir.1966) and Town of Coushatta v. Valley Electric Membership Corporation, 139 So.2d 822 (La.App. 2nd Cir.1962) a non-exclusive franchise holder has a right to operate free from non-franchised competition and that when Callais was granted its franchise, that right became exclusive as to HCI. It therefore claims that it is entitled to injunctive relief against HCI to prevent an irreparable trammeling of its rights. Consequently, in order to determine whether Callais is actually entitled to such relief, we must first determine the effect, if any, of the 1976 amendments to La.R.S. 33:4361 and La.R.S. 45:781 on HCI.
HCI began its operations under the legal sanction of La.R.S. 45:781. The State in Acts 1880, No. 124, § 1, offered to companies "transmitting intelligence" the right to "construct and maintain telegraph, telephone or other lines necessary ... along all public roads or public works ... and along the streets of any city, with the consent of the city council or trustees." HCI and its predecessors accepted this offer by investing in the equipment necessary to construct a fledgling cable television service. Callais now argues that Act 573 of 1976 requires HCI to obtain a franchise from the police jury to operate and that its operations without one are infringing upon Callais' franchise rights. We disagree and find that Callais' asserted construction of Act 573 would render it unconstitutional, in violation of the Contract Clauses, La. Const. art. I, § 23, and the United States Const., art. I, § 10.[4]
In Russell v. Sebastian, 233 U.S. 195, 34 S.Ct. 517, 58 L.Ed. 912 (1914), the U.S. Supreme Court considered a provision of the California State Constitution of 1879, as amended in 1885, which gave "any individual, or any company duly incorporated for such purpose ... the privilege of using the public streets and thoroughfares [of certain municipalities] and of laying down pipes ... and connections ... as may be necessary for ... supplying such city ... with gaslight ... or with fresh water...." Sebastian, 34 S.Ct. at 517, quoting California Const. of 1879, art. 11, § 19.
In 1911, this section was amended to provide, in pertinent part, that "[p]ersons or corporations may establish and operate works for supplying the inhabitants with such services upon such conditions and under such regulations as the municipality may prescribe under its organic law ...." Sebastian, 34 S.Ct. at 517-18. (Emphasis added.)
Approximately two weeks later, the municipality of Los Angeles passed two ordinances, one providing that "no one should exercise any franchise or privilege to lay or maintain pipes or conduits in the streets for conveying gas, water, etc., without having *10 obtained a grant from the city ...," and the other making it unlawful to make any excavation in the street for any purpose without written permission from the city. Sebastian, 34 S.Ct. at 518. The plaintiff was arrested four months later for violation of this latter ordinance and sued out a writ of habeas corpus alleging that the city ordinances and the 1911 constitutional amendment unconstitutionally impaired the company's contract with the state, in violation of U.S. Const. art. I, § 10.
The facts set forth in the opinion were that the plaintiff's employer, the Economic Gaslight Company, was organized in 1909, so that the constitutional provision (before the 1911 amendment) applied to it; that it acquired a plant and extended its system to serve 3,500 customers; and that its intent was to supply the entire city, and to that end it had constructed a plant capable of serving a much larger area than that served on the date of the 1911 amendment. It was further established that the company had applied to the Board of Public Works for permission to excavate in the streets, in compliance with the city ordinance but was refused this permission until and unless it first obtained a franchise in accordance with the recent constitutional amendment. The company defied the city and proceeded with its expansion, resulting in the plaintiff's arrest.
The court characterized the central issue of the case not as the right of the city to supervise the work or regulate the gas rates but, rather, as "the nature and extent of the right acquired by the company prior to the constitutional amendment ...." Sebastian, 34 S.Ct. at 519. The court noted that the grant embraced "any [qualified] city" in the state, and "when as to such a city the offer was accepted, the grant became as effective as if it had been made specially to the accepting individual or corporation." The court held that there could be no dispute "[t]hat the grant, resulting from an acceptance of the state's offer, constituted a contract, and vested in the accepting individual or corporation a property right, protected by the Federal Constitution," and concluded that "the constitutional amendment of 1911, and the municipal ordinances adopted in pursuance thereof, were ineffectual to impair this right...." Sebastian, 34 S.Ct. at 520, 522.
The Sebastian analysis and holding were employed more recently in Southern Bell Telephone and Telegraph Co. v. City of Meridian, 154 F.Supp. 736 (E.D.Miss. 1957).[5]Meridian involved not a constitutional grant but a legislative one. The Mississippi Legislature in 1886 enacted Chapter 38 of the Mississippi Code of 1880, adding telephone companies to the rank of telegraph companies, granting them:
the right to construct, maintain and operate telegraph or telephone lines through any public lands of this State, and on, across and along all highways, streets and roads, and across and under any navigable waters .... Meridian, 154 F.Supp. at 738.
The corporate predecessors of Southern Bell had, since the invention of the telephone in 1876, maintained telephone exchanges in the City of Meridian, beginning with the Louisiana Telephone Company. In 1926 the Southern Bell Telephone and Telegraph Company acquired the rights of the company then servicing Meridian. It continued to expand its business and used *11 the streets and highways of Mississippi continuously until 1956. In that year, the Mississippi Legislature passed Laws of 1956, Chapter 372 of the Mississippi Code, providing (paraphrased) that municipalities could now charge certain utilities 2% of their monthly service charges, whether the utility was franchised or not. The act also contained a repealer clause purporting not to affect "any rights accruing, accrued or established prior to the effective date" of the act. Meridian, 154 F.Supp. at 739.
The court framed the central issue of the case and answered that issue in two sentences:
The question now arises whether or not the plaintiff in this case and its predecessors in title had accepted the privileges granted by the Laws of 1886 so as to constitute a contract between the State and the companies that is protected by the federal and state constitutions. The authorities are unanimous that it is a binding contract and to change its terms would be to impair the obligations of a contract and conflict with the U.S. Constitution. Meridian, 154 F.Supp. at 740.
Relying primarily upon Sebastian, the Federal Court reasoned that "the plaintiff in this case, having accepted the [statute's] benefits and relied upon its provisions and expanded its services, indicated a clear intent to accept the offer, and as a result a binding contract became effective.... [T]he offer by the state to companies of benefits when accepted by any utility is irrevocable and is more than mere license to use the streets at the will of the legislature." Meridian, 154 F.Supp. at 740. The court concluded that:
It is clear that the act of 1956 by the Mississippi State Legislature, if it undertakes to authorize a municipality to impose the charges, is beyond the power of the legislature and would conflict with the constitution of the United States.... [T]he plaintiff had acquired vested rights and these vested rights could not be impaired by the State of Mississippi .... Meridian, 154 F.Supp. at 742-743.
Finally, we draw upon the work of our Supreme Court in a case involving the very statute (La.R.S. 45:781) which is at the heart of this case. In City of New Orleans v. Great Southern Telephone and Telegraph Co., 3 So. 533, 40 La.Ann. 41 (1888), the city had in 1879 authorized the defendant to construct its poles and lines along the city streets. One year later, the Legislature passed Act 124 (present day R.S. 45:781(A)). The court found that "[t]he defendant, having the prior consent of the city, certainly came under the protection of this act as to the maintenance of its lines from the date of its passage." Great Southern, 3 So. at 534. In 1883, the city passed an ordinance charging companies $5.00 per pole for all new and existing poles in certain parts of the city. The court noted that the ordinance characterized the charge as "a price or consideration for the privileges enjoyed" and determined that "[t]he question for our determination is whether the city had the right to make such a regulation or impose such condition." Great Southern, 3 So. at 534, 535. Recognizing that the phone company had "at great expense" established its plant and constructed its lines under the grant of authority from the city and for "no other consideration than the furnishing of certain free telephonic facilities to the city," our Supreme Court concluded that "the grant of authority to defendant, when accepted and acted upon, became an irrevocable contract, and the city is powerless to set it aside or to interpolate new or more onerous considerations therein...." Great Southern, 3 So. at 535.
Although the Great Southern case involved the specific grant of authority by a city, we believe the principle flowing through Sebastian, Meridian, and Great Southern applies to the general grant of authority by the state found in La.R.S. 45:781. Indeed, we feel that the aforementioned decisions mandate the result we reach here under both our State and Federal Constitutions. HCI's operations under the broad Legislative grant of La.R.S. 45:781 vested in the company the right to *12 continue such operations. It is well established that an ongoing business is a property right, entitled to constitutional protection. Banjavich v. Louisiana Licensing Board for Marine Divers, 237 La. 467, 111 So.2d 505 (1959); Mongogna v. O'Dwyer, 204 La. 829, 16 So.2d 829 (1943); Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 197 So. 566 (1940). The fact that HCI took advantage of the La.R.S. 45:781 grant and pioneered a cable system before the legislative process provided for the coming of age of the cable industry should not work to HCI's detriment. It cannot be arbitrarily made to cease operations after acting in reliance upon a legislative grant of rights. Both reason and the authorities we have here examined compel this result; our State and Federal Constitutions demand it.
Every statute is presumed to be constitutional, and the Court of Appeal is bound to uphold it when possible. Statutory language broad enough to be applied both validly and invalidly may be given the valid application when such conforms to the legislative intent and purpose of the statute. New Orleans Firefighters Association v. Civil Service Commission of City of New Orleans, 422 So.2d 402 (La.1982); Faulk v. State, 382 So.2d 992 (La.App. 1st Cir.1980), writ denied, 383 So.2d 1016 (La. 1980); Fitzmorris v. Lambert, 382 So.2d 169 (La.App. 1st Cir.1979), writ denied, 384 So.2d 793 (La.1979). Since the interpretation Callais would have us give Act 573 would be an unconstitutional and therefore impermissible construction, it follows that Callais' demand for injunctive relief, dependent upon that construction, must be denied. We stress here that we do not hold Act 573 of 1976 to be unconstitutional; nor do we hold any parts of La.R.S. 33:4361 or 45:781 to be unconstitutional. Our determination of unconstitutionality applies only to the hypothetical application Callais would give Act 573.
Callais argues alternatively that should we find HCI to be lawfully operating, we should rely upon Section 2 of Acts of 1978, No. 83, to restrict its operations. The pertinent section of that act provides:
Any individual, partnership or corporation operating a franchise or operating system of cable television on the effective date of this Act shall continue to operate such franchise or operating system under the same terms and conditions as it is operating under on the effective date of this Act.
Callais asserts that the language "shall continue to operate ... under the same terms and conditions" requires that HCI service only those customers and retain the same station carriage and station carriage capability as it had at the time of the act. This argument, too, must be rejected. The cable television industry is a dynamic one, depending upon competition for viewable programming, maintaining state-of-the-art equipment, and a fluctuating subscriber base. To apply "terms and conditions" as Callais suggests would slowly throttle HCI, effectively running it out of business. For the principles discussed above, such a construction cannot be allowed. We note that in Sebastian the Supreme Court considered a similar argument. Addressing the scope of the offer contained in the constitutional provision in question there, the court said:
It was not simply [the grant] of a privilege to maintain pipes actually laid, but to lay pipes so far as they might be required in order to effect an adequate distribution.... The breadth of the offer was commensurate with the requirements of the undertaking which was invited. Sebastian, 34 S.Ct. at 520-521.
Furthermore, we do not read Act 83 of 1978 as requiring the restrictions Callais asserts. The "terms and conditions" of HCI's operations were and are contained in La.R.S. 45:781 and, generally, all other applicable State and Federal laws. It may conduct its operations as allowed by the statute subject, of course, to the reasonable exercise of the police power of the Police Jury and/or the State. State v. Birdsell, 235 La. 396, 104 So.2d 148 (1958); Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248 (1949); Wes-T-Erre Development *13 Corp. v. Parish of Terrebonne, Police Jury of Parish of Terrebonne, 416 So.2d 209 (La.App. 1st Cir.1982), writ denied, 421 So.2d 251 (La.1982). We express no opinion as to the validity or application of any of the acts amending La.R.S. 33:4361 and 45:781 as proper exercises of the police power of the State.
For the reasons stated above, the judgment of the trial court is affirmed and appellant's suit is dismissed. Costs of this appeal are taxed to appellant.
AFFIRMED.
LANIER, J., concurs for reasons to be assigned.
CRAIN, J., concurs for reasons assigned by LANIER, J.
LANIER, Judge, concurring.
We agree with the result reached in the lead opinion but do not agree with its rationale for reaching that result.
Prior to Act 573 of 1976, cable television companies were not prohibited from conducting business operations by State law, were not subject to franchising or regulation by non-home rule parish governing authorities (police juries) and pursuant to La.R.S. 45:781 had authority to conduct their operations on public property and public rights-of-way. KAOK-CATV, Inc. v. Louisiana Cable T.V., Inc., 195 So.2d 297 (La.App. 3rd Cir.1967). Act 573 of 1976 amended La.R.S. 33:4361 to give police juries the power to grant franchises and/or regulate the construction, maintenance and operation of cable television companies as follows:
Police juries may, subject to any conditions, regulations and restrictions which they impose, grant franchises over the public places, roads, streets, and alleys of their respective parishes, not within the limits of any municipality, to any person for:
. . . . .
(5) The construction, maintenance and operation of television lines and cables whether erected on poles owned or leased from existing public utilities or on poles to be erected, or through cables to be laid underground for receiving, distributing and transmitting television impulses or signals to residences, commercial establishments or other customers. A franchise shall be awarded to the highest responsible bidder in accordance with the public bid laws of the state. The specifications shall state the area to be served by the franchise, the duration of the franchise, and the other terms of the agreement. (Emphasis added).
Act 573 also amended La.R.S. 45:781 by adding thereto Paragraph (B) which provided as follows:
Nothing provided in Section A herein shall affect the right granted to parish governing authorities to grant franchises for the regulation of cable television outside municipalities.[[1]]
A provision of law is self-executing when no subsequent action is necessary by a legislative body to give it effect. Cf. State v. Flynn, 160 La. 483, 107 So. 314 (1926); State ex rel. Noe v. Knop, 190 So. 135 (La.App.Orl.1939).[2] If a provision of law is incomplete in itself and contemplates supplemental and enabling legislation, it is not *14 self-executing. Cf. Moosa v. Abdalla, 248 La. 344, 178 So.2d 273 (1965). A provision of law which is not self-executing is of no effect until the necessary assisting legislation has been enacted. Cf. State ex rel. Noe v. Knop, 190 So. at 142; 16 C.J.S. Constitutional Law § 48 (1956).
The provisions of La.R.S. 33:4361, as amended by Act 573 of 1976, are not self-executing. This statute authorizes police juries to exercise certain powers but does not mandate such because the verb "may" is used to grant the power. Further, the grant of power is subject to any conditions, regulations and restrictions which may be imposed by the police jury. These conditions, regulations and restrictions can only come into existence by subsequent legislative action by the police jury. The record contains no evidence to show that the Terrebonne Parish Police Jury enacted an ordinance to prohibit the operation of a cable television system, or the expansion of an existing cable television system, without a franchise. See, for example, Town of Kinder v. Beauregard Electric Cooperative, Inc., 339 So.2d 891, 893 (La.App. 3rd Cir.1976). The evidence of record only indicates that ordinances were enacted to establish a procedure for granting a non-exclusive franchise for a cable television system in the unincorporated area of Terrebonne Parish and to specify the terms of this franchise.
Section 2 of Act 83 of 1978 provided as follows:
Any individual, partnership or corporation operating a franchise or operating system of cable television on the effective date of this Act shall continue to operate such franchise or operating system under the same terms and conditions as it is operating under on the effective date of this Act.
The language used in this "grandfather" clause denotes a legislative intention to ratify the existence and activities of operating cable television systems on the effective date of the Act. By authorizing such systems to continue to operate "under the same terms and conditions" as they operated on the effective date of the Act, this legislation authorizes such systems to do the things necessary to continue to function, including, but not limited to, improving programming capabilities and physical equipment and adding new subscribers within the geographical area serviced on the effective date of the Act. We believe this interpretation is implicit in the language used and that these activities are necessary concomitants to the ratification.
There is no evidence in the record which indicates that HCI has actually expanded its operations outside of the geographical area it was serving on the effective date of Act 83 or has threatened to do so. Accordingly, Callais is not entitled to injunctive relief.
It is well settled in the law that a court should not consider a constitutional question where it is not necessary to a resolution of the dispute. Benson & Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Commission, 403 So.2d 13 (La.1981); Aston v. Lazarus, 439 So.2d 1240 (La.App. 5th Cir.1983); Viator v. City of New Iberia, 428 So.2d 1329 (La.App. 3rd Cir.1983). The constitutional rulings contained in the lead opinion are unnecessary to a resolution of this case for the following reasons:
(1) La.R.S. 33:4361, as amended by Act 573 of 1976, is not self-executing;
(2) There is no evidence of record that the Terrebonne Parish Police Jury enacted an ordinance pursuant to La.R.S. 33:4361 that prohibited the operation of a cable television system, or the expansion of an existing cable television system, without a franchise;
(3) A reasonable interpretation of the language contained in the "grandfather" clause of Section 2 of Act 83 of 1978 would ratify the operations of HCI in the geographical area it was serving on the effective date of that Act with all concomitants thereto; and
(4) There is no evidence of record that HCI has expanded its operations outside the geographical area it was serving on the effective date of Act 83 of 1978 or has threatened to do so.
*15 For these reasons, we do not subscribe to the rationale of the lead opinion.
Because of our interpretation of the "grandfather" clause and the lack of evidence to show operations by HCI outside the geographical area served on the effective date of that clause, it is unnecessary for us to rule on whether or not the cases of Town of Kinder, Gulf States Utilities Company v. Dixie Electric Membership Corporation, 185 So.2d 313 (La.App. 1st Cir.1966) and Town of Coushatta v. Valley Electric Membership Corporation, 139 So.2d 822 (La.App. 2nd Cir.1961) are applicable.
We agree with the decree of the lead opinion.
NOTES
[1] La.R.S. 45:781 (1950), in pertinent part:

"Corporations, domestic or foreign, formed for the purpose of transmitting intelligence by telegraph or telephone or other system of transmitting intelligence, may construct and maintain telegraph, telephone or other lines necessary to transmit intelligence along all public roads or public works, and along and parallel to any of the railroads in the state, and along and over the waters of the state, if the ordinary use of the roads, works, railroads, and waters are not obstructed, and along the streets of any city, with the consent of the city council or trustees. Such companies, shall be entitled to the right of way over all lands belonging to the state and over the lands, privileges and servitudes of other persons, and to the right to erect poles, piers, abutments, and other works necessary for constructing and maintaining lines and works, upon making just compensation therefor."
[2] La.R.S. 33:4361 (1950):

"§ 4361. Police jury may grant franchise for use of streets, roads, and alleys outside municipalities
Police juries may, subject to any conditions, regulations, and restrictions which they impose, grant franchises over the public places, roads, streets, and alleys of their respective parishes, not within the limits of any municipality, to any person for:
(1) The construction, maintenance, and operation of lines of poles and wire for the transmission of electric current for heat, light, or power;
(2) Laying, maintaining and operating lines of pipe or mains for supplying gas or water in, over, under or along the public roads, streets or alleys;
(3) The construction, maintenance, and operation of sewerage and drain pipes across, along and underneath the roads, alleys, and public places;
(4) The construction, maintenance and operation of railways utilizing electric or motive power other than steam, under the conditions hereinafter set forth."
[3] La.R.S. 33:4361 (1976):

"Police juries may, subject to any conditions, regulations, and restrictions which they impose, grant franchises over the public places, roads, streets, and alleys of their respective parishes, not within the limits of any municipality, to any person for:
(1) The construction, maintenance, and operation of lines of poles and wire for the transmission of electric current for heat, light, or power.
(2) Laying, maintaining, and operating lines of pipe or mains for supplying gas or water in, over, under or along the public roads, streets, or alleys.
(3) The construction, maintenance, and operation of sewerage and drain pipes across, along and underneath the roads, alleys, and public places.
(4) The construction, maintenance, and operation of railways utilizing electric or motive power other than steam, under the conditions hereinafter set forth.
(5) The construction, maintenance, and operation of television lines and cables whether erected on poles owned or leased from existing public utilities or on poles to be erected, or through cables to be laid underground for receiving, distributing, and transmitting television impulses or signals to residences, commercial establishments, or other customers. A franchise shall be awarded to the highest responsible bidder in accordance with the public bid laws of the state. The specifications shall state the area to be served by the franchise, the duration of the franchise, and other terms of the agreement."
[4] La. Const. art. I, § 23: "No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted."

U.S. Const., art. I, § 10 in pertinent part: "No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility."
[5] The Meridian decision was vacated by the U.S. Supreme Court, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959) under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) to allow state court consideration of the claims made under the Constitution of the State of Mississippi. For that reason, we cite this decision not as authoritative precedent but instead for its well-reasoned application of the Federal Contract Clause in this factual context. It should be noted that the District Court was affirmed by the United States Fifth Circuit Court of Appeals, 256 F.2d 83 (5th Cir.1958), which noted that as for the judgment and reasons given for it, "we find ourselves in full agreement." Meridian, 256 F.2d at 87. Furthermore, the Mississippi State Supreme Court, based upon its state constitution contract clause, rendered an opinion substantially identical to that of the Federal District Court, in Southern Bell Telephone & Telegraph Co. v. City of Meridian, 241 Miss. 678, 131 So.2d 666 (1961).
[1] Although the title of Act 573 indicates that part of its purpose was to exclude cable television from the provisions of La.R.S. 45:781, the language contained in Paragraph (B) in the body of the Act apparently did not achieve this result. See Edward J. Gay Planting and Manufacturing Co., Ltd. v. Bayou Cable Television, Inc., 423 So.2d 58 (La.App. 1st Cir.1982), wherein it was held that cable television companies retained the power of expropriation granted to them in La.R.S. 45:781.
[2] For examples of self-executing provisions of law, see Student Government Association of Louisiana State University and Agricultural and Mechanical College, Main Campus, Baton Rouge v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 262 La. 849, 264 So.2d 916 (1972); Angelle v. State, 212 La. 1069, 34 So.2d 321 (1948); Vaughn v. Coco, 409 So.2d 282 (La.App. 1st Cir.1981); State ex rel. Wootan, Praying for Testing of Sureties on Notarial Bonds, 364 So.2d 1079 (La.App. 4th Cir.1978).